[925 NE2d 899, 899 NYS2d 97]

In the Matter of EDWARD A. MARON et al., Appellants, v SHELDON SILVER, as Speaker of the State Assembly, et al., Respondents, et al., Respondent.

SUSAN LARABEE et al., Respondents-Appellants, v GOVERNOR OF THE STATE OF NEW YORK, Respondent, and NEW YORK STATE SENATE et al., Appellants-Respondents.

CHIEF JUDGE OF THE STATE OF NEW YORK et al., Appellants-Respondents, v GOVERNOR OF THE STATE OF NEW YORK et al., Respondents-Appellants.

Argued January 12, 2010; decided February 23, 2010

**POINTS OF COUNSEL**

*Steven Cohn, P.C.,* Carle Place (*Steven Cohn, Richard Lieb* and *Paula Schwartz Frome* of counsel), for appellants in the

first above-entitled proceeding and action. I. New York's judges have a right under the Constitution to a salary adjustment under the circumstances of this case. (*People ex rel. Burby v Howland,* 155 NY 270; *Larabee v Governor of State of N.Y.,* 65 AD3d 74; *United States v Brewster,* 408 US 501; *Hutchinson v Proxmire,* 443 US 111; *United States v Johnson,* 383 US 169; *Under 21, Catholic Home Bur. for Dependent Children v City of New York,* 65 NY2d 344; *Subcontractors Trade Assn. v Koch,* 62 NY2d 422; *Matter of County of Oneida v Berle,* 49 NY2d 515; *O'Donoghue v United States,* 289 US 516; *Golden v Clark,* 76 NY2d 618.) II. Appellants are entitled to mandamus because they have a clear legal right to the increased compensation granted by chapter 51 of the Laws of 2006 (2006 Act), which was complete, immediately effective, and could not lawfully be made contingent on the enactment of further legislation; they are also entitled to declaratory relief declaring their right to increased compensation under the 2006 Act. (*Ortiz v Fibreboard Corp.,* 527 US 815; *Klostermann v Cuomo,* 61 NY2d 525; *Matter of County of Oneida v Berle,* 49 NY2d 515; *People v Tremaine,* 252 NY 27; *Pataki v New York State Assembly,* 4 NY3d 75; *People ex rel. Westchester Fire Ins. Co. v Davenport Trustees,* 91 NY 574; *Larabee v Governor of State of N.Y.,* 65 AD3d 74; *Public Serv. Commn., Second Dist. v New York Cent. R.R. Co.,* 193 App Div 615, 230 NY 149; *Woollcott v Shubert,* 217 NY 212; *United States v Trans-Missouri Freight Assn.,* 166 US 290.)

*Schlam Stone & Dolan LLP,* New York City (*Richard H. Dolan, David J. Katz* and *Erik S. Groothuis* of counsel), for respondents in the first above-entitled proceeding and action. I. The statutes setting judicial salaries are entitled to a presumption of constitutionality. (*Elmwood-Utica Houses v Buffalo Sewer Auth.,* 65 NY2d 489; *INS v Chadha,* 462 US 919; *McGowan v Burstein,* 71 NY2d 729; *Matter of Wolpoff v Cuomo,* 80 NY2d 70; *Cohen v State of New York,* 94 NY2d 1.) II. "Linkage" is a core legislative function protected by the Speech or Debate Clause. (*Matter of Rivera v Espada,* 98 NY2d 422; *People v Ohrenstein,* 77 NY2d 38; *Matter of Straniere v Silver,* 218 AD2d 80, 89 NY2d 825; *Gravel v United States,* 408 US 606; *Matter of Urbach v Farrell,* 229 AD2d 275; *Campaign for Fiscal Equity v State of New York,* 179 Misc 2d 907, 265 AD2d 277; *Bogan v Scott-Harris,* 523 US 44; *State Empls. Bargaining Agent Coalition v Rowland,* 494 F3d 71; *Campaign for Fiscal Equity v State of New York,* 271 AD2d 379; *Urban Justice Ctr. v Pataki,* 10 Misc 3d 939, 38 AD3d 20, *appeal dismissed sub nom. Urban Justice Ctr. v Spitzer,* 8 NY3d 958.) III. New York's Constitution

does not prohibit "linkage," and the practice does not violate the Separation of Powers Doctrine. (*Larabee v Governor of State of N.Y.*, 65 AD3d 74; *Urban Justice Ctr. v Pataki*, 38 AD3d 20, *appeal dismissed sub nom. Urban Justice Ctr. v Spitzer*, 8 NY3d 958; *Campaign for Fiscal Equity, Inc. v State of New York*, 8 NY3d 14; *Matter of New York State Inspection, Sec. & Law Enforcement Empls., Dist. Council 82, AFSCME, AFL-CIO v Cuomo*, 64 NY2d 233; *United States v Hatter*, 532 US 557; *Cohen v State of New York*, 94 NY2d 1; *INS v Chadha*, 462 US 919; *Matter of Prospect v Cohalan*, 65 NY2d 867; *Pataki v New York State Assembly*, 4 NY3d 75; *Under 21, Catholic Home Bur. for Dependent Children v City of New York*, 65 NY2d 344.) IV. Appellants' equal protection claim was properly dismissed. (*Bower Assoc. v Town of Pleasant Val.*, 2 NY3d 617; *San Antonio Independent School Dist. v Rodriguez*, 411 US 1; *Affronti v Crosson*, 95 NY2d 713; *Washington v Glucksberg*, 521 US 702; *People v Isaacson*, 44 NY2d 511; *Kimel v Florida Bd. of Regents*, 528 US 62; *Heller v Doe*, 509 US 312; *Minnesota v Clover Leaf Creamery Co.*, 449 US 456; *Dalton v Pataki*, 5 NY3d 243; *Port Jefferson Health Care Facility v Wing*, 94 NY2d 284.) V. Respondents have not violated the Compensation Clause of the State Constitution. (*Clark v State of New York*, 142 NY 101; *People v Tremaine*, 252 NY 27; *People v Ohrenstein*, 77 NY2d 38; *Campaign for Fiscal Equity, Inc. v State of New York*, 8 NY3d 14; *United States v Will*, 449 US 200; *Williams v United States*, 240 F3d 1019; *Atkins v United States*, 556 F2d 1028; *Larabee v Governor of State of N.Y.*, 65 AD3d 74; *Matter of Catanise v Town of Fayette*, 148 AD2d 210; *Matter of Kelch v Town Bd. of Town of Davenport*, 36 AD3d 1110.) VI. Mandamus does not lie to compel the Comptroller to disburse the funds appropriated in chapter 51 of the Laws of 2006. (*Klostermann v Cuomo*, 61 NY2d 525; *Matter of Kupersmith v Public Health Council of State of N.Y.*, 101 AD2d 918, 63 NY2d 904; *Matter of United Methodist Retirement Community Dev. Corp. v Axelrod*, 110 AD2d 292; *Matter of Rodriguez v Goord*, 260 AD2d 736, 93 NY2d 818; *Matter of Malik v Berlinland*, 158 AD2d 836, 76 NY2d 704; *People v Tremaine*, 252 NY 27; *Matter of Blyn v Bartlett*, 39 NY2d 349; *Cohen v State of New York*, 94 NY2d 1.)

*Schlam Stone & Dolan LLP*, New York City (*Richard H. Dolan, David J. Katz* and *Erik S. Groothuis* of counsel), for respondent and appellants-respondents in the second above-entitled action. I. The statutory provisions establishing the levels of judicial compensation are entitled to a presumption of constitutionality. (*Elmwood-Utica Houses v Buffalo Sewer Auth.*,

65 NY2d 489; *INS v Chadha,* 462 US 919; *McGowan v Burstein,* 71 NY2d 729; *Matter of Wolpoff v Cuomo,* 80 NY2d 70; *Cohen v State of New York,* 94 NY2d 1.) II. "Linkage" is a core legislative function protected by the Speech or Debate Clause. (*Matter of Rivera v Espada,* 98 NY2d 422; *People v Ohrenstein,* 77 NY2d 38; *Matter of Straniere v Silver,* 218 AD2d 80, 89 NY2d 825; *Gravel v United States,* 408 US 606; *Matter of Urbach v Farrell,* 229 AD2d 275; *Campaign for Fiscal Equity v State of New York,* 179 Misc 2d 907, 265 AD2d 277; *Bogan v Scott-Harris,* 523 US 44; *State Empls. Bargaining Agent Coalition v Rowland,* 494 F3d 71; *Campaign for Fiscal Equity v State of New York,* 271 AD2d 379; *Urban Justice Ctr. v Pataki,* 10 Misc 3d 939, 38 AD3d 20, *appeal dismissed sub nom. Urban Justice Ctr. v Spitzer,* 8 NY3d 958.) III. New York's Constitution does not prohibit "linkage," and the practice does not violate the Separation of Powers Doctrine. (*Matter of Maron v Silver,* 58 AD3d 102; *Urban Justice Ctr. v Silver,* 66 AD3d 567; *Pataki v New York State Assembly,* 4 NY3d 75; *Urban Justice Ctr. v Pataki,* 38 AD3d 20, *appeal dismissed sub nom. Urban Justice Ctr. v Spitzer,* 8 NY3d 958; *Under 21, Catholic Home Bur. for Dependent Children v City of New York,* 65 NY2d 344; *INS v Chadha,* 462 US 919; *Campaign for Fiscal Equity, Inc. v State of New York,* 8 NY3d 14; *Matter of New York State Inspection, Sec. & Law Enforcement Empls., Dist. Council 82, AFSCME, AFL-CIO v Cuomo,* 64 NY2d 233; *United States v Hatter,* 532 US 557; *Cohen v State of New York,* 94 NY2d 1.) IV. The Senate should have been dismissed because it did not engage in "linkage." V. The lower court erred in affirming summary judgment on this record. (*Alvarez v Prospect Hosp.,* 68 NY2d 320; *Smalls v AJI Indus., Inc.,* 10 NY3d 733.) VI. The relief granted does not conform to the constitutional infirmity found. (*Campaign for Fiscal Equity, Inc. v State of New York,* 8 NY3d 14.)

*Cohen & Gressler LLP,* New York City (*Thomas E. Bezanson, Alexandra Wald* and *Matthew V. Povolny* of counsel), and *Chadbourne & Parke LLP* (*George Bundy Smith* and *J. Carson Pulley* of counsel), for respondents-appellants in the second above-entitled action. I. Defendants' appeal should be dismissed. II. Defendants' Speech or Debate Clause argument would eviscerate the Separation of Powers Doctrine. (*Blue Grass Partners v Bruns, Nordeman, Rea & Co.,* 75 AD2d 791; *People v Padua,* 297 AD2d 536; *Campaign for Fiscal Equity v State of New York,* 179 Misc 2d 907, 265 AD2d 277; *Matter of Straniere v Silver,* 218 AD2d 80; *Bogan v Scott-Harris,* 523 US 44; *Urban Justice Ctr. v Silver,* 66 AD3d 567; *Samuels v New York State Dept. of*

*Health,* 29 AD3d 9; *Pataki v New York State Assembly,* 4 NY3d 75; *Pollicina v Misericordia Hosp. Med. Ctr.,* 82 NY2d 332; *Matter of Malloy,* 278 NY 429.) III. Linkage violates the separation of powers. (*Under 21, Catholic Home Bur. for Dependent Children v City of New York,* 65 NY2d 344; *Urban Justice Ctr. v Pataki,* 38 AD3d 20, *appeal dismissed sub nom. Urban Justice Ctr. v Spitzer,* 8 NY3d 958; *People ex rel. Burby v Howland,* 155 NY 270; *Duplantier v United States,* 606 F2d 654; *O'Donoghue v United States,* 289 US 516; *Campaign for Fiscal Equity, Inc. v State of New York,* 8 NY3d 14; *Klostermann v Cuomo,* 61 NY2d 525; *Dickinson v Crosson,* 219 AD2d 50; *Nicolai v Crosson,* 214 AD2d 714.) IV. The Senate engaged in linkage and should be held accountable. V. The Appellate Division correctly affirmed the IAS court's order granting summary judgment on the undisputed record before it and the relief it granted was proper. (*Matter of Kelch v Town Bd. of Town of Davenport,* 36 AD3d 1110; *Matter of Catanise v Town of Fayette,* 148 AD2d 210; *United States v Hatter,* 532 US 557; *O'Donoghue v United States,* 289 US 516; *Briggs v 2244 Morris L.P.,* 30 AD3d 216; *Russell v Town of Pittsford,* 94 AD2d 410; *Rotuba Extruders v Ceppos,* 46 NY2d 223; *Johnson v Danna Oil Co.,* 28 Misc 2d 651; *Yesuvida v Pennsylvania R.R. Co.,* 200 Misc 815; *Evans v Gore,* 253 US 245.) VI. The relief granted was proper. VII. The Appellate Division erred by affirming the order of the IAS court, dismissing plaintiffs' first cause of action for unconstitutional diminishment of judicial compensation. (*Evans v Gore,* 253 US 245; *Miles v Graham,* 268 US 501; *O'Malley v Woodrough,* 307 US 277; *Atkins v United States,* 556 F2d 1028; *United States v Will,* 449 US 200; *United States v Hatter,* 532 US 557; *Matter of Carey v Morton,* 297 NY 361; *Black v Graves,* 257 App Div 176, 281 NY 792; *Matter of Legum v Goldin,* 55 NY2d 104.) VIII. The Appellate Division erred in declining to grant the reasonable and appropriate monetary relief that plaintiffs seek. (*United States v Will,* 449 US 200; *Atkins v United States,* 556 F2d 1028; *Matter of Gresser v O'Brien,* 146 Misc 909, 263 NY 622; *Williams v United States,* 240 F3d 1019, 535 US 911; *O'Donoghue v United States,* 289 US 516; *People ex rel. Burby v Howland,* 155 NY 270; *Boehner v Anderson,* 809 F Supp 138, 30 F3d 156; *Schultz v Harrison Radiator Div. Gen. Motors Corp.,* 90 NY2d 311; *Nicolai v Crosson,* 214 AD2d 714; *Deutsch v Crosson,* 171 AD2d 837.)

*Suhana S. Han,* New York City, *Adam R. Brebner* and *Matthew A. Parham* for New York County Lawyers' Association, amicus curiae in the second above-entitled action. I. The 30%

decrease in judicial salaries since 1999 is an unconstitutional diminution of judicial compensation. (*United States v Will,* 449 US 200; *People ex rel. Burby v Howland,* 155 NY 270; *United States v Hatter,* 532 US 557; *Evans v Gore,* 253 US 245; *Miles v Graham,* 268 US 501; *O'Malley v Woodrough,* 307 US 277; *Matter of Carey v Morton,* 297 NY 361; *Randall v Sorrell,* 548 US 230; *Marbury v Madison,* 1 Cranch [5 US] 137; *Black v Graves,* 257 App Div 176.) II. Defendants have violated the Separation of Powers Doctrine. (*People ex rel. Burby v Howland,* 155 NY 270; *Matter of Kelch v Town Bd. of Town of Davenport,* 36 AD3d 1110; *O'Malley v Woodrough,* 307 US 277; *United States v Hatter,* 532 US 557; *Tenney v Brandhove,* 341 US 367; *Powell v McCormack,* 395 US 486; *Marbury v Madison,* 1 Cranch [5 US] 137; *New York County Lawyers' Assn. v State of New York,* 294 AD2d 69; *Silver v Pataki,* 96 NY2d 532.)

*Briscoe R. Smith,* Larchmont, and *Martin S. Kaufman* for Atlantic Legal Foundation and another, amici curiae in the second above-entitled action. I. Inadequate judicial compensation in New York is detrimental to business and the economy. (*Matter of Maron v Silver,* 58 AD3d 102.) II. The New York Legislature has failed to respond to inadequate judicial compensation.

*Dorsey & Whitney LLP,* New York City (*Zachary W. Carter* of counsel), and *Eric B. Epstein* for Zachary W. Carter, amicus curiae in the second above-entitled action. I. Linkage and the resulting diminishment of judicial compensation violate the Separation of Powers Doctrine. (*Under 21, Catholic Home Bur. for Dependent Children v City of New York,* 65 NY2d 344; *Matter of County of Oneida v Berle,* 49 NY2d 515; *O'Donoghue v United States,* 289 US 516; *Loving v United States,* 517 US 748; *People ex rel. Burby v Howland,* 155 NY 270; *Matter of Kelch v Town Bd. of Town of Davenport,* 36 AD3d 1110; *Matter of Catanise v Town of Fayette,* 148 AD2d 210; *Roe v Board of Trustees of Vil. of Bellport,* 65 AD3d 1211; *New York County Lawyers' Assn. v State of New York,* 196 Misc 2d 761; *People v Allen,* 301 NY 287.) II. Linkage and the resulting diminishment of judicial compensation violate the Compensation Clause. (*United States v Will,* 449 US 200; *People ex rel. Burby v Howland,* 155 NY 270; *Black v Graves,* 257 App Div 176, 281 NY 792; *Atkins v United States,* 556 F2d 1028; *United States v Hatter,* 532 US 557; *Walz v Tax Comm'n of City of New York,* 397 US 664.)

*Wollmuth Maher & Deutsch LLP,* New York City (*Vincent T.*

*Chang* of counsel), for Asian American Bar Association of New York and others, amici curiae in the second above-entitled action. I. Inadequate judicial compensation disproportionately reduces the pool of minority group members who are willing and able to serve as judges. (*United States v Hatter,* 532 US 557.) II. Threats to judicial independence disproportionately affect minority group members. (*People ex rel. Burby v Howland,* 155 NY 270; *Under 21, Catholic Home Bur. for Dependent Children v City of New York,* 65 NY2d 344; *United States v Will,* 449 US 200; *Loving v United States,* 517 US 748.)

*Wachtell, Lipton, Rosen & Katz,* New York City (*Bernard W. Nussbaum, George T. Conway III, Graham W. Meli* and *Kevin S. Schwartz* of counsel), and *Michael Colodner* for appellants-respondents in the third above-entitled action. I. If the Judiciary is to continue to function as an independent, coequal branch of government, judicial compensation must be adequate. Defendants have breached their constitutional duty to provide adequate compensation. (*Larabee v Spitzer,* 19 Misc 3d 226, *affd sub nom. Larabee v Governor of State of N.Y.,* 65 AD3d 74; *Matter of Maron v Silver,* 58 AD3d 102; *Matter of County of Oneida v Berle,* 49 NY2d 515; *Matter of LaGuardia v Smith,* 288 NY 1; *People ex rel. Burby v Howland,* 155 NY 270; *Printz v United States,* 521 US 898; *O'Donoghue v United States,* 289 US 516; *United States v Will,* 449 US 200; *Matter of Kelch v Town Bd. of Town of Davenport,* 36 AD3d 1110; *Matter of Catanise v Town of Fayette,* 148 AD2d 210.) II. Defendants have violated the Compensation Clause by discriminating against judges. (*United States v Hatter,* 532 US 557; *O'Malley v Woodrough,* 307 US 277; *Evans v Gore,* 253 US 245; *United States v Will,* 449 US 200; *Williams v United States,* 535 US 911; *Matter of Maron v Silver,* 58 AD3d 102; *Atkins v United States,* 556 F2d 1028.) III. Neither the Speech or Debate Clause nor the Separation of Powers Doctrine bars relief. This Court has the power to set the amount of judicial compensation that the Executive and the Legislature have conceded is appropriate. (*Larabee v Spitzer,* 19 Misc 3d 226; *Powell v McCormack,* 395 US 486; *Marbury v Madison,* 1 Cranch [5 US] 137; *Bogan v Scott-Harris,* 523 US 44; *People v Ohrenstein,* 77 NY2d 38; *Kilbourn v Thompson,* 103 US 168; *Dombrowski v Eastland,* 387 US 82; *Matter of Straniere v Silver,* 218 AD3d 80, 89 NY2d 825; *Cass v State of New York,* 58 NY2d 460; *Tenney v Brandhove,* 341 US 367.)

*Schlam Stone & Dolan LLP,* New York City (*Richard H. Dolan, David J. Katz* and *Erik S. Groothuis* of counsel), for

respondents-appellants in the third above-entitled action. I. The statutory provisions establishing the levels of judicial compensation are entitled to a presumption of constitutionality. (*Elmwood-Utica Houses v Buffalo Sewer Auth.*, 65 NY2d 489; *INS v Chadha*, 462 US 919; *McGowan v Burstein*, 71 NY2d 729; *Matter of Wolpoff v Cuomo*, 80 NY2d 70; *Cohen v State of New York*, 94 NY2d 1.) II. The First Department's order finding that "linkage" violates the Constitution should be reversed. (*Matter of Rivera v Espada*, 98 NY2d 422; *People v Ohrenstein*, 77 NY2d 38; *Matter of Straniere v Silver*, 218 AD2d 80, 89 NY2d 825; *Gravel v United States*, 408 US 606; *Matter of Urbach v Farrell*, 229 AD2d 275; *Campaign for Fiscal Equity v State of New York*, 179 Misc 2d 907, 265 AD2d 277; *Bogan v Scott-Harris*, 523 US 44; *State Empls. Bargaining Agent Coalition v Rowland*, 494 F3d 71; *Campaign for Fiscal Equity v State of New York*, 271 AD2d 379; *Urban Justice Ctr. v Pataki*, 10 Misc 3d 939, 38 AD3d 20, *appeal dismissed sub nom. Urban Justice Ctr. v Spitzer*, 8 NY3d 958.) III. The Senate should have been dismissed because it did not engage in "linkage." (*Larabee v Governor of State of N.Y.*, 65 AD3d 74.) IV. The lower court erred in affirming summary judgment on this record. (*Alvarez v Prospect Hosp.*, 68 NY2d 320; *Smalls v AJI Indus., Inc.*, 10 NY3d 733.) V. The relief granted does not conform to the constitutional infirmity found. (*Larabee v Spitzer*, 19 Misc 3d 226; *Larabee v Governor of State of N.Y.*, 20 Misc 3d 866, 65 AD3d 74; *Campaign for Fiscal Equity, Inc. v State of New York*, 8 NY3d 14.) VI. Supreme Court's order holding that compensation paid to judges was not constitutionally inadequate should be affirmed. (*United States v Will*, 449 US 200; *Williams v United States*, 535 US 911; *Matter of Catanise v Town of Fayette*, 148 AD2d 210; *Matter of Kelch v Town Bd. of Town of Davenport*, 36 AD3d 1110; *Roe v Board of Trustees of Vil. of Bellport*, 65 AD3d 1211; *Haggerty v City of New York*, 267 NY 252.) VII. Supreme Court's order dismissing plaintiffs' discrimination claim should be affirmed. (*United States v Hatter*, 532 US 557; *O'Malley v Woodrough*, 307 US 277; *Larabee v Spitzer*, 19 Misc 3d 226, *affd sub nom. Larabee v Governor of State of N.Y.*, 65 AD3d 74; *United States v Will*, 449 US 200; *Williams v United States*, 240 F3d 1019.)

*Stroock & Stroock & Lavan LLP*, New York City (*Joseph L. Forstadt, Ernst H. Rosenberger, Burton N. Lipshie, Jerry H. Goldfeder, Sandra J. Rampersaud* and *Linda M. Melendres* of counsel), for Association of Justices of the Supreme Court of the State of New York and others, amici curiae in the first above-entitled proceeding and action and the second and third

above-entitled actions. I. By making legislative salary increases and other unrelated issues a condition to approving judicial salary increases, defendants have abused their power and threaten the independence of the Judiciary. (*Evans v Gore,* 253 US 245, *overruled on other grounds sub nom. United States v Hatter,* 532 US 557; *O'Donoghue v United States,* 289 US 516; *Williams v United States,* 535 US 911; *Matter of County of Oneida v Berle,* 49 NY2d 515; *People ex rel. Burby v Howland,* 155 NY 270; *Matter of Kelch v Town Bd. of Town of Davenport,* 36 AD3d 1110; *Matter of Catanise v Town of Fayette,* 148 AD2d 210; *Larabee v Governor of State of N.Y.,* 20 Misc 3d 866, 65 AD3d 74; *Matter of Straniere v Silver,* 218 AD2d 80, 89 NY2d 825; *Gravel v United States,* 408 US 606.) II. Judicial salaries, currently stalled at 1999 rates, have diminished in value by almost 30%, and that lost purchasing power is an unconstitutional diminution that violates the Compensation Clause. (*United States v Hatter,* 532 US 557; *Miles v Graham,* 268 US 501; *Edelstein v Crosson,* 187 AD2d 694; *Buckley v Crosson,* 202 AD2d 972; *Barth v Crosson,* 199 AD2d 1050; *Schultz v Harrison Radiator Div. Gen. Motors Corp.,* 90 NY2d 311; *Harrison v Schaffner,* 312 US 579; *Buckley v Valeo,* 424 US 1; *Randall v Sorrell,* 548 US 230; *Pennsylvania Coal Co. v Mahon,* 260 US 393.) III. By failing to provide adequate judicial compensation, by singling out judges for especially unfavorable treatment, and by linking judicial salaries to legislative salaries and unrelated matters, defendants have violated article VI, § 25 of the New York State Constitution.

*Weil, Gotshal & Manges LLP,* New York City (*Caitlin J. Halligan, Gregory Silbert* and *David Yolkut* of counsel), for Fund for Modern Courts, amicus curiae in the third above-entitled action. I. Defendants have failed to fulfill their constitutional duty of providing adequate judicial compensation. (*Larabee v Governor of State of N.Y.,* 65 AD3d 74; *Under 21, Catholic Home Bur. for Dependent Children v City of New York,* 65 NY2d 344; *People ex rel. Burby v Howland,* 155 NY 270; *Matter of Maron v Silver,* 58 AD3d 102; *Plaut v Spendthrift Farm, Inc.,* 514 US 211; *New York County Lawyers' Assn. v State of New York,* 294 AD2d 69; *Matter of People v Little,* 89 Misc 2d 742, 60 AD2d 797; *Saxton v Carey,* 44 NY2d 545; *Silver v Pataki,* 96 NY2d 532; *Bogan v Scott-Harris,* 523 US 44.) II. Defendants' continued failure to raise judicial salaries threatens the integrity and excellence of New York's Judiciary. (*Larabee v Governor of State of N.Y.,* 65 AD3d 74; *O'Donoghue v United States,* 289 US 516.)

**OPINION OF THE COURT**

Pigott, J.

The constitutional arguments raised in these judicial compensation appeals are premised upon, among other things, alleged violations of the New York State Constitution's Compensation Clause and the Separation of Powers Doctrine. Because the Separation of Powers Doctrine is aimed at preventing one branch of government from dominating or interfering with the functioning of another coequal branch, we conclude that the independence of the Judiciary is improperly jeopardized by the current judicial pay crisis and this constitutes a violation of the Separation of Powers Doctrine.

## I. Factual Background

The compensation of justices and judges of the Unified Court System, with certain exceptions not applicable here, is governed by article 7-B of the Judiciary Law (*see* Judiciary Law §§ 221—221-i). Article VI, § 25 (a) of the New York Constitution, also known as the "Compensation Clause," directs that the compensation of justices and judges "shall be established by law and shall not be diminished during the term of office for which he or she was elected or appointed."

The last time the Legislature adjusted judicial compensation was in 1998, through the amendment of Judiciary Law article 7-B (*see* L 1998, ch 630, § 1 [eff Jan. 1, 1999]). That adjustment increased the annual salaries of this State's Judiciary to make them commensurate with the salaries paid their federal counterparts.[1] Now, however, New York State ranks nearly last of the 50 states in its level of judicial compensation, adjusting for the cost of living. It is estimated that, over the last 11 years, the real value of judicial salaries has declined by approximately 25% to 33%.

At the time the roughly 1,300 judges and justices who comprise the so-called "Article VI judges" (i.e. judges covered by article VI of the New York State Constitution) received the pay raise that was enacted in 1998, they presided over 3.5 million cases. Ten years later, in 2008, the judges presided over a staggering 4.5 million cases, 38% of which were criminal (approximately 1.71 million cases), 42% civil (approximately 1.89

---

1. For reference, according to the Federal Judicial Center, more than 90% of the cases filed annually are in state courts, less than 10% are filed in the federal system.

million cases), 17% Family Court (approximately 765,000 cases) and 3% Surrogates' Court (approximately 135,000 cases) (*see* New York State Unified Court System 1998 and 2008 Annual Reports).

In 2006, the Judiciary submitted to Governor Pataki, as part of its proposed annual budget, a request for $69.5 million to fund salary adjustments for the approximately 1,300 article VI judges, retroactive to April 1, 2005. The intention was to restore pay parity with federal judicial salaries. Although made part of the state budget (*see* L 2006, ch 51, § 2), the Legislature failed to authorize disbursement of the appropriation, because the Legislature and the Governor could not agree on a pay increase for the legislators themselves.

The following year, Governor Spitzer included in his executive budget more than $111 million for judicial pay raises, retroactive to April 1, 2005, which, if implemented, would have placed salaries of State Supreme Court justices at an amount roughly on a par with federal judicial compensation. The Legislature removed that provision from the budget two months later.

In April 2007, the Senate passed a bill (2007 NY Senate Bill S5313) increasing judicial compensation, this time retroactive to January 1, 2007, and calling for the creation of a commission to review future salary increases for both judges *and* legislators. Governor Spitzer refused to support this legislation, however, unless the Legislature enacted campaign finance and ethics reform measures. Two months later, the Governor expressed support for a "judges only" pay bill.

Shortly thereafter, the Senate passed another bill (2007 NY Senate Bill S6550) providing for an increase in judicial salaries, this time without any corresponding increase for legislators. It also called for the establishment of a commission to examine future increases in judicial salaries taking into account the needs of the Judiciary and the State's ability to pay. The Assembly refused to act on that bill because it did not provide for an increase in legislative pay.

The following year, Governor Paterson and the Legislature approved a budget for 2008-2009 that included $48 million for judicial salary increases. Like the 2006-2007 appropriation, this was a so-called "dry appropriation" requiring further legislation before the salaries could be paid—legislation that was never enacted.

All parties to this litigation agree that article VI justices and judges have earned and deserve a salary increase. That is what

makes this litigation unique. Although the parties have been in accord regarding the need to adjust judicial compensation, the failure of the Legislature and the Executive to come to an agreement on legislation effecting a pay increase has led to the continuing inertia underlying this dispute.

## II. Procedural History

### *Maron v Silver et al.*

The *Maron* petitioners—current and former State Supreme Court Justices and District Court Judges—commenced this hybrid CPLR article 78 proceeding/declaratory judgment action against respondents Sheldon Silver, as Speaker of the Assembly, Joseph Bruno, then Temporary President of the Senate, Eliot Spitzer, then Governor of New York, Thomas DiNapoli in his capacity as State Comptroller, the Assembly and Senate and the Office of Court Administration (OCA).[2] The article 78 proceeding seeks mandamus relief compelling the Comptroller to disburse all retroactive sums and pay the budgeted raises allocated in the 2006-2007 state budget for judicial salary reform. The petition also asserts violations of the Separation of Powers Doctrine, equal protection and the State Compensation Clause.

Supreme Court, Albany County, partially granted defendants' motion to dismiss the petition for failure to state a cause of action, leaving intact the separation of powers claim. The court further held that Silver, Bruno and Spitzer were immune from suit because setting judicial salaries is a legislative act, and concluded that to the extent the petition alleged a constitutional violation against the Assembly and Senate, those allegations constituted claims against the State.[3]

In a 4-1 decision, the Appellate Division dismissed the petition, holding, among other things, that the *Maron* petitioners' failure "to allege a discriminatory attack on the judicial branch that has impaired or imminently threatened the Judiciary's independence and ability to function" was fatal to their separation of powers claim (*Matter of Maron v Silver*, 58 AD3d 102, 123 [3d Dept 2008]).

The *Maron* petitioners appealed to this Court as of right on the constitutional questions presented. This Court retained

---

**2.** The sole claim asserted against the OCA involved judicial health benefits. That claim has been severed from this action by stipulation and is not at issue on this appeal.

**3.** For ease of reference, all defendants to these litigations are collectively referred to as "State defendants."

jurisdiction over the appeal and denied leave to appeal as unnecessary (*see Matter of Maron v Silver*, 12 NY3d 909 [2009]).

## Larabee v Governor et al.

The *Larabee* plaintiffs—members of the New York State Judiciary—commenced this declaratory judgment action against Eliot Spitzer, in his capacity as Governor, the New York State Assembly and Senate, and the State, alleging violations of the State Compensation Clause and the Separation of Powers Doctrine.

Supreme Court, New York County, granted the State defendants' motion to dismiss the Compensation Clause cause of action but, similar to the Supreme Court in *Maron*, concluded that the *Larabee* plaintiffs had sufficiently pleaded a separation of powers claim (*see Larabee v Spitzer*, 19 Misc 3d 226, 231-237 [Sup Ct, NY County 2008]). Supreme Court dismissed the complaint in its entirety as against Governor Spitzer, noting that the *Larabee* plaintiffs conceded that he was not an "essential party" to the action, all parties having agreed that the Assembly, Senate and State were proper parties (*see id.* at 237-239).

Supreme Court subsequently granted the *Larabee* plaintiffs summary judgment on the separation of powers cause of action (*see Larabee v Governor of State of N.Y.*, 20 Misc 3d 866, 877 [Sup Ct, NY County 2008]). The State defendants appealed from that order and the *Larabee* plaintiffs cross-appealed from Supreme Court's order dismissing their Compensation Clause claim.

The Appellate Division affirmed both orders (*Larabee v Governor of State of N.Y.*, 65 AD3d 74 [1st Dept 2009]). The *Larabee* plaintiffs and State defendants appealed as of right and we retained jurisdiction.

## Chief Judge v Governor et al.

The *Chief Judge* plaintiffs—former Chief Judge Judith S. Kaye[4] and the New York State Unified Court System—commenced this declaratory judgment action asserting three causes of action against David Paterson, Sheldon Silver and Joseph Bruno, all in their respective official capacities, and the Assembly, Senate and State.

---

4. The parties have since stipulated to substitute Chief Judge Jonathan Lippman for former Chief Judge Kaye.

The complaint asserts one cause of action premised on a violation of the State Compensation Clause under a different theory than that posed by the *Maron* and *Larabee* plaintiffs; namely, that the diminution in judicial salaries has had a discriminatory effect on the Judiciary, rendering unconstitutional the salaries codified in Judiciary Law §§ 221—221-i. The two remaining claims are grounded on the Separation of Powers Doctrine. One of the claims is similar to those raised in the *Maron* and *Larabee* litigation; the other is premised on the theory that the Judiciary cannot function as a coequal branch if it is not assured of receiving "adequate compensation," and that the judicial salaries codified in Judiciary Law §§ 221—221-i are constitutionally insufficient.

The State defendants moved to dismiss the complaint for failure to state a cause of action. Supreme Court, New York County, searched the record and granted the *Chief Judge* plaintiffs summary judgment on the separation of powers claim that was similar to the one raised in *Larabee*, but dismissed the remaining causes of action attacking the constitutionality of Judiciary Law §§ 221—221-i (*see Chief Judge of State of N.Y. v Governor of State of N.Y.*, 25 Misc 3d 268, 271-273 [Sup Ct, NY County 2009]). As in *Larabee*, Supreme Court dismissed the complaint in its entirety as against the Governor (*see id.* at 271-272). The State defendants appealed to the Appellate Division, which affirmed for the reasons stated in *Larabee* (*see Chief Judge of State of N.Y. v Governor of State of N.Y.*, 65 AD3d 898, 899 [1st Dept 2009]).

The *Chief Judge* plaintiffs appealed Supreme Court's order directly to this Court pursuant to CPLR 5601 (b) (2) and we retained jurisdiction over the appeal. Because the *Chief Judge* plaintiffs challenged the constitutionality of the judicial salaries set forth in Judiciary Law §§ 221—221-i, the direct appeal from the order of Supreme Court was proper.[5] The State defendants appealed as of right from the Appellate Division's affirmance of Supreme Court's order granting the *Chief Judge* plaintiffs summary judgment on the separation of powers claim.

### III. Rule of Necessity

█ Members of the Court of Appeals are paid via the salary schedule delineated in Judiciary Law § 221 and therefore will be

---

5. Based on these conclusions, the State defendants' contention that the *Chief Judge* plaintiffs' appeal from Supreme Court should be dismissed for lack of jurisdiction is without merit.

affected by the outcome of these appeals. Ordinarily, when a judge has an interest in litigation, recusal is warranted. But this case falls within a narrow exception to that rule. Because no other judicial body with jurisdiction exists to hear the constitutional issues raised herein, this Court must hear and dispose of these issues pursuant to the Rule of Necessity (*see Maresca v Cuomo*, 64 NY2d 242, 247 n 1 [1984], *appeal dismissed* 474 US 802 [1985] [addressing a challenge to the State Constitution's mandatory retirement age requirements for certain state judges], citing *Matter of Morgenthau v Cooke*, 56 NY2d 24, 29 n 3 [1982]).

## IV. Nonconstitutional Statutory Claim (*Maron* Petitioners Only)

The *Maron* petitioners assert that the constitutional issues raised on these appeals can be avoided should this Court find that they are entitled to relief in the nature of mandamus compelling the Comptroller to pay the $69.5 million appropriated in the 2006-2007 state budget. As support for this argument, petitioners focus on section 2 of chapter 51 of the Laws of 2006 addressing "JUDICIAL COMPENSATION REFORM." That provision contained a $69.5 million budget item "[f]or expenses necessary to fund adjustments in the compensation of state-paid judges and justices of the unified court system *pursuant to a chapter of the laws of 2006*" (emphasis supplied). Petitioners claim that the Comptroller improperly impounded these funds and should be ordered to release them to provide for judicial salary increases.

A CPLR article 78 proceeding seeking mandamus to compel the performance of a specific duty applies only to acts that are ministerial in nature and not those that involve the exercise of discretion (*see Matter of Gimprich v Board of Educ. of City of N.Y.*, 306 NY 401, 406 [1954]; *see also* Siegel, NY Prac § 558, at 958 [4th ed]). Because of the constitutional requirement that judicial compensation be "established by law" (NY Const, art VI, § 25 [a]), mandamus does not lie in this instance because no subsequent chapter law was enacted either amending the Judiciary Law salary schedules or directing the disbursement of the funds.

The $69.5 million referenced in the judicial budget was explicitly made contingent upon the adoption of additional legislation, i.e. a chapter of the Laws of 2006. Had the Legislature intended that the judicial compensation appropriation be self-executing, as petitioners claim, there would have been no

need for the qualifying language. Moreover, a mere provision calling for a lump-sum payment of $69.5 million without repeal or revision of the Judiciary Law article 7-B judicial salary schedules is further evidence that additional legislation was required before the funds could be disbursed. We, therefore, conclude that the Appellate Division properly dismissed petitioners' cause of action seeking mandamus against the Comptroller.

## V. Constitutional Claims (All Litigants)

### A. Equal Protection

#### The Judiciary as a "Suspect Class" (*Maron* Petitioners)

The *Maron* petitioners are the only litigants in these appeals who have alleged that the Judiciary constitutes a "suspect class" that has been denied equal protection under the law because judicial pay raises have been historically contingent on or "tied to" salary increases for legislators. They also assert that the State defendants' rationale for refusing to increase judicial salaries fails to pass the "strict scrutiny" test or the less stringent rational basis test. For the reasons set forth in the Appellate Division order, we conclude that Supreme Court properly dismissed that cause of action (*see Maron*, 58 AD3d at 123-124).

### B. Compensation Clause

The *Maron* petitioners and the *Larabee* plaintiffs assert Compensation Clause causes of action that are premised on their claims that judicial salaries have been unconstitutionally diminished because of inflation. The *Chief Judge* plaintiffs posit an additional argument, asserting that the Legislature's act of freezing judicial salaries while increasing the salaries of 195,000 other state employees amounted to discrimination against the Judiciary.

#### Diminution by "Pure Inflation" (*Maron* and *Larabee*)

The State Compensation Clause provides, in relevant part, that the compensation of members of the Judiciary "shall be established by law and shall not be diminished during the term of office for which he or she was elected or appointed" (NY Const, art VI, § 25 [a]). The purpose of this "Compensation Clause" is the same as its federal counterpart: to promote judicial independence and ensure that the pay of prospective judges, who choose to leave their practices or other legal positions for the bench, will not diminish (*see United States v Will*, 449 US 200, 221 [1980]).

The *Maron* petitioners and *Larabee* plaintiffs base their Compensation Clause arguments on an identical theory: By failing to increase judicial compensation, the Legislature has allowed inflation to considerably diminish the "real value" of judicial salaries, violating the State Compensation Clause's prohibition against diminution. They further claim that the State Compensation Clause's prohibition against diminishment should include the diminishment of compensation by any cause, including inflation.

Since the inception of our State Constitution, this State has grappled with the issue of how best to establish the parameters of judicial compensation. In 1846, the Constitutional Convention adopted the phrase "shall not be increased or diminished" (1846 NY Const, art VI, § 7); an 1869 amendment (1846 Const, art VI, § 14, as amended), however, deleted the words, "increased or," allowing for the increase of compensation, but not a decrease (*see* Carter, New York State Constitution: Sources of Legislative Intent, at 85 [1988]). Article VI, § 12 of the 1894 Constitution restored the 1846 "shall not be increased or diminished" language, which was thereafter deleted in its entirety in 1909 and adopted a specific constitutional provision fixing salaries for certain judges at $10,000 per year (*see Matter of Gresser v O'Brien*, 146 Misc 909, 917-918 [Sup Ct, NY County 1933], *affd* 263 NY 622 [1934]). In 1921, a Judiciary Constitutional Convention was held to consider, among other things, amendments to the State Constitution concerning judicial compensation (*see* Judiciary Constitutional Convention of 1921: Report to Legislature, at 3 [Jan. 4, 1922]). The Convention criticized the 1909 Compensation Clause amendment's inclusion of a salary schedule in the Constitution, stating that judicial compensation " 'should, in the judgment of the present convention, be left entirely to the Legislature, which after all, is the body always directly in touch with and responsible to the people' " (*Problems Relating to Judicial Administration and Organization*, 1938 Rep of NY Constitutional Convention Comm, vol 9, at 341, quoting Judiciary Constitutional Convention of 1921: Report to Legislature, at 29).

■ In recommending removal of the salary schedule, the Convention considered the deleterious effects of inflation on judicial compensation and how it could negatively impact the independence and effectiveness of the Judiciary, ultimately concluding that the Legislature was in the best position to address that issue (*see* Judiciary Constitutional Convention of

1921: Report to Legislature, at 29). In 1925, the State Compensation Clause's "shall not be diminished" language was reinstated (1894 NY Const, art VI, § 19, as amended) and remains unchanged (*see* Carter, at 85). It is evident from the events predating the 1925 amendment that the concept of diminution of compensation was of paramount concern, and the final outcome was to authorize the Legislature to remedy any deficiencies; notably, the Legislature was precluded from diminishing salaries in recognition of the risk that salary manipulation might be used as a tool to retaliate for unpopular judicial decisions. Although the State Compensation Clause plainly prohibits the diminution of judicial compensation by legislative act during a judge's term of office, there is no evidence in the history of the Clause's enactment or subsequent amendments that supports a broad interpretation embracing indirect diminishment by neglect. Thus, there is no evidence that the State Compensation Clause's "no diminishment" rule was intended to affirmatively require that judicial salaries be adjusted to keep pace with the cost of living.[6]

In this regard, the state provision is comparable to the Federal Compensation Clause (US Const, art III, § 1) which also contains the same "shall not be diminished" language. Like the drafters of the State Compensation Clause, the Framers of the Federal Constitution were cognizant of the effects of inflation on judicial compensation, but nonetheless left that determination to the discretion of the legislature.

At least two proposals concerning inflation were offered at the federal Constitutional Convention. One suggestion was that the fluctuations in the value of judicial compensation could be accounted for "by taking for a standard wheat or some other thing of permanent value" (2 M. Farrand, The Records of the Federal Convention of 1787, at 45 [1911]). The other suggestion left judicial compensation to the discretion of the legislature, which was in a better position to address inflationary concerns (*see Will*, 449 US at 219-220; *see also* Hamilton, Federalist No. 79 ["It (is) therefore necessary to leave it to the discretion of

---

**6.** That being said, as indicated later in this opinion, we do not rule out the possibility that a total neglect by the Legislature to consider or address judicial salaries could never, depending on the passage of time and changes in the value of money, cause salaries to dip so low that they fall below a constitutionally permissible floor. To choose an extreme example, if the Legislature had not raised salaries since 1909 when certain judges earned an annual salary of $10,000, a very different case would be presented.

the legislature to vary (compensation) in conformity to the variations in circumstances, yet under such restrictions as to put it out of the power of that body to change the condition of the individual for the worse"]). The latter approach carried the day, with the Convention adopting a motion to allow an increase of judicial compensation by Congress and, as a result, "accepting a limited risk of external influence in order to accommodate the need to raise judges' salaries when times changed" (*Will*, 449 US at 220).

Contrary to the contention of the *Maron* petitioners and *Larabee* plaintiffs, federal jurisprudence does not support their assertion that the State and Federal Compensation Clauses prohibit "indirect" diminution of compensation due to inflation. Although the cases cited support the general proposition that judicial compensation may not be either "directly" or "indirectly" reduced, none of them stands for the proposition that the Legislature's failure to adjust compensation to account for inflation constitutes an indirect attack on judicial compensation.

In *Evans v Gore*, a federal judge challenged, on Federal Compensation Clause grounds, Congress's authority to include sitting federal judges within the scope of a federal income tax law that the Sixteenth Amendment had authorized years earlier, claiming that the imposition of such a tax constituted a diminishment in salary (*see* 253 US 245, 247 [1920], overruled by *United States v Hatter*, 532 US 557 [2001]). In finding the tax violative of the Federal Compensation Clause, the *Evans* court noted that

> "diminution may be effected in more ways than one. Some may be direct and others indirect, or even evasive . . . But all which by their necessary operation and effect withhold or take from the judge a part of that which has been promised by law for his services must be regarded as within the prohibition" (*id*. at 254).

In *Miles v Graham*, the United States Supreme Court extended the *Evans* holding to those judges who assumed office after the tax had become law (268 US 501, 508-509 [1925], *overruled in part by O'Malley v Woodrough*, 307 US 277 [1939]). The *O'Malley* court overruled *Miles*, but left the core holding of *Evans* intact (*see O'Malley*, 307 US at 282-283). However, the Supreme Court in *United States v Hatter* overruled *Evans*

"insofar as it holds that the Compensation Clause forbids Congress to apply a generally applicable, nondiscriminatory tax to the salaries of federal judges, whether or not they were appointed before enactment of the tax" (*Hatter*, 532 US at 567). The *Hatter* court agreed with *Evans*, however,

> "insofar as it holds that the Compensation Clause offers protections that extend beyond a legislative effort directly to diminish a judge's pay, say, by ordering a lower salary . . . Otherwise a legislature could circumvent even the most basic Compensation Clause protection by enacting a discriminatory tax law, for example, that precisely but *indirectly* achieved the forbidden effect" (*id*. at 569 [emphasis supplied]).

The evolution of Supreme Court jurisprudence from *Evans* to *Hatter* establishes that a nondiscriminatory tax that treats judges the same as other citizens is permissible, but direct diminution of compensation or the discriminatory taxation of judges is not. In either case, it is the diminishment of salary by Congress, be it direct or indirect, that is prohibited.

Here, the Legislature has not enacted legislation that has directly diminished judicial compensation in violation of the State Compensation Clause, nor has it enacted discriminatory legislation that has indirectly resulted in the diminution of judicial compensation. The claim is that inflation has had this effect. However, at least as far as the Federal Compensation Clause is concerned, the intention of the Framers was that Congress would serve as the fail-safe that prevents inflation from eating away at the real value of judicial salaries (*see Atkins v United States*, 556 F2d 1028, 1048 [US Ct Cl 1977], *cert denied* 434 US 1009 [1978] [addressing inflation]).

There is no reason for this Court to depart from that rationale, because it is evident from the history surrounding the enactment of our State Compensation Clause that, although the diminution in value of judicial compensation by inflation was a concern, the drafters decided that the best way to combat the effects of inflation was to count on the Legislature—the body directly accountable to the public—to assure the fair and appropriate compensation of the Judiciary. We therefore determine that the Legislature's failure to address the effects of inflation in this case does not equate to a per se violation of the Compensation Clause.

Compensation Clause—Discrimination (*Chief Judge*)

The *Chief Judge* plaintiffs' Compensation Clause argument is distinctly different from the claims raised by the other litigants. Rather than contending that inflation resulted in the unconstitutional diminution of judicial salaries, they assert that by freezing judicial salaries while repeatedly increasing the salaries of almost all of the remaining 195,000 state employees to keep pace with the cost of living, the State defendants discriminated against the Judiciary in violation of the State Compensation Clause.

This argument is premised exclusively on the Supreme Court's holding in *Hatter* (532 US 557 [2001], *supra*), which involved a Social Security tax law that, at the time of its enactment, mandated that all newly-hired federal employees participate in the Social Security program. The law also offered almost all of the then-currently employed federal employees (96%) the option to participate without any additional financial obligation. But it created an exception for the remaining four percent of currently employed federal employees, however, which required members of that class—who contributed to a "covered" retirement program—to participate in the system *without* any further additional financial obligation. The legislation left those who did not participate in a "covered" program (i.e., a group consisting "almost exclusively" of federal judges) without a choice; their financial obligations and payroll deductions would increase as a result of the imposition of the new tax (*id.* at 562-564).

In finding the law violative of the Federal Compensation Clause as discriminatory against judges, the *Hatter* court noted that the Social Security legislation was

> "special—in its manner of singling out judges for disadvantageous treatment, in its justification as necessary to offset advantages related to constitutionally protected features of the judicial office, and in the degree of permissible legislative discretion that would have to underlie any determination that the legislation has 'equalized' rather than gone too far" (*id.* at 576).

It was these elements that made the Social Security tax distinctly different from a nondiscriminatory tax (*id.*).

According to the *Chief Judge* plaintiffs, just as the Social Security tax law in *Hatter* imposed a discriminatory tax on the

Judiciary, inflation has the same impact on judicial compensation as a tax and, although the failure to remedy it in and of itself may not violate the State Compensation Clause, in this case the Judiciary has been singled out because nearly all of the other 195,000 state employees have received salary increases to compensate in part for inflation.

■ We are unpersuaded that relief is warranted under the *Hatter* analysis. First, *Hatter* involved a legislative enactment that discriminated against federal judges by reducing the compensation of judges only; the situation here does not involve any legislative enactment that directly or indirectly diminishes judicial compensation. Second, although other state employees have received adjustments to account for inflation, judges are not the only state employees whose salaries have not been adjusted; the Governor, Lieutenant Governor, members of the Legislature and other constitutional officers have also not received salary increases since 1999. We therefore cannot say that judges have been disadvantaged in a manner comparable to the discriminatory treatment in *Hatter*. Therefore, Supreme Court properly dismissed this cause of action.

C. Separation of Powers

Speech or Debate Clause Defense (State Defendants)

Before we address plaintiffs' separation of powers arguments, we consider the legislative defendants' primary defense that both houses of the Legislature and their leaders are immune from any such claim under the Speech or Debate Clause. The State Speech or Debate Clause provides that "[f]or any speech or debate in either house of the legislature, the members shall not be questioned in any other place" (NY Const, art III, § 11). The scope of immunity this provision bestows upon members of the Legislature provides "as much protection as the immunity granted by the comparable provision of the Federal Constitution" (*People v Ohrenstein*, 77 NY2d 38, 53 [1990] [citation omitted]), and "protects against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts" (*United States v Brewster*, 408 US 501, 525 [1972]).

The Appellate Division in *Maron* dismissed the separation of powers cause of action because, to the extent the Legislature failed to either increase judicial compensation due to inaction or because it tied such increases to "political wrangling over unrelated issues," such failure constitutes a legislative function

protected by article III, § 11 (*Maron*, 58 AD3d at 121-123). The courts in *Larabee* and *Chief Judge*, however, concluded that the Speech or Debate Clause did not bar review.

■ The Speech or Debate Clause applies to only "members" and to "any speech or debate in either house." Nowhere does the Clause state that such immunity applies to either house of the Legislature as a whole, and therefore, it does not apply to the Assembly or the Senate. For the same reason, the State may not assert this defense.

In any event, all of the parties acknowledge that the Judiciary is entitled to an increase in compensation, and the State defendants have made proclamations outside of the legislative and executive chambers as to why such an increase has not occurred (*see e.g. Ohrenstein*, 77 NY2d at 54 [issuance of press releases and newsletters deemed not protected legislative acts]; *see also Matter of Rivera v Espada*, 98 NY2d 422, 428 [2002] [same]; *Hutchinson v Proxmire*, 443 US 111 [1979]). As a result, this Court need not inquire "into acts that occur in the regular course of the legislative process" or the Legislature's motives for such acts (*see Brewster*, 408 US at 525), eliminating the danger of the Judiciary intruding upon the independence of the legislative branch.

We therefore address the merits of the separation of powers arguments.

### Failure by Legislature to Independently and Objectively Consider Compensation Increases (*Maron*, *Larabee* and *Chief Judge*)

The *Maron* petitioners and the *Larabee* and *Chief Judge* plaintiffs all make the same separation of powers argument: By tying judicial compensation to unrelated legislative objectives and policy initiatives, as opposed to conducting an independent assessment of judicial compensation, the Legislature has disregarded the Separation of Powers Doctrine and threatened the independence of the Judiciary.

The State defendants counter that there is nothing in the constitutional text or framework prohibiting the Legislature from considering judicial compensation along with other prerogatives. Furthermore, any declaration condemning that practice as unconstitutional would itself constitute a separation of powers violation by the Judiciary through intrusion into budgetary and appropriations processes.

In *Maron,* the Appellate Division dismissed petitioners' claim on the ground that their failure "to allege a discriminatory attack on the judicial branch that has impaired or imminently threatened the Judiciary's independence and ability to function" was fatal to the claim (*Maron,* 58 AD3d at 123). This claim met with greater success in *Larabee* and *Chief Judge,* where the Appellate Divisions in each of those cases upheld the Supreme Court's award of summary judgment to those plaintiffs (*see Chief Judge,* 65 AD3d 898, 899 [2009]; *Larabee,* 65 AD3d at 74).

The concept of the separation of powers is the bedrock of the system of government adopted by this State in establishing three coordinate and coequal branches of government, each charged with performing particular functions (*see generally Under 21, Catholic Home Bur. for Dependent Children v City of New York,* 65 NY2d 344, 355-356 [1985]; *Matter of County of Oneida v Berle,* 49 NY2d 515, 522 [1980]). The Constitution's aim "is to regulate, define and limit the powers of government by assigning to the executive, legislative and judicial branches distinct and independent powers," thereby ensuring "an even balance of power [among] the three" (*People ex rel. Burby v Howland,* 155 NY 270, 282 [1898]). The separation of the three branches is necessary " 'for the preservation of liberty itself,' " and " '[i]t is a fundamental principle of the organic law that each department should be free from interference, in the discharge of its peculiar duties, by either of the others' " (*Berle,* 49 NY2d at 522, quoting *Burby,* 155 NY at 282). To accomplish this important goal, articles III, IV and VI of the State Constitution address the respective powers conferred upon, and respective compensation of, the Legislature, Executive and Judiciary.

Article III states that "[t]he legislative power of this state shall be vested in the senate and the assembly" (NY Const, art III, § 1), and that "[e]ach member of the legislature shall receive for his or her services a like annual salary, to be fixed by law . . . [but] the salary of any member . . . may [not] be increased or diminished during, and with respect to, the term for which he or she shall have been elected" (NY Const, art III, § 6).

Article IV states that "[t]he executive power shall be vested in the governor, who shall hold office for four years" (NY Const, art IV, § 1), and who "shall receive for his or her services an annual salary to be fixed by joint resolution of the senate and assembly" (NY Const, art IV, § 3).

Article VI states that "[t]here shall be a unified court system for the state" (NY Const, art VI, § 1 [a]) and that the compensation of judges and justices within that system "shall be established by law and shall not be diminished during the term of office for which he or she was elected or appointed" (NY Const, art VI, § 25 [a]).

We find it significant that the compensation provisions for each branch of government are not contained in article III where the powers of the legislative branch are articulated, but rather are separately addressed in the article for each respective branch. Although a function of the Legislature is to approve the compensation of each of the three branches, this fact underscores only the checks and balances of the system; it does not rebut the fact that the compensation to be paid to members of each particular branch must be determined separately and distinctly from the others. Indeed, whether the Judiciary is entitled to a compensation increase must be based upon an objective assessment of the Judiciary's needs if it is to retain its functional and structural independence. Simply put, by failing to consider judicial compensation increases on the merits, and instead holding them hostage to other legislative objectives, the Legislature "[w]eaken[s the Judiciary] by making it unduly dependent" on the Legislature (*Burby*, 155 NY at 282).

Separate budgets, separate articles in the Constitution, and separate provisions concerning compensation are all testament to the fact that each branch is independent of the other. This, of course, does not mean that the branches operate without concern for the other. Both the Legislature and the Governor rely on the good faith of the other and of the Judiciary for the good of the State. As members of the two "political" branches, the Governor and Legislature understandably have the power to bargain with each other over all sorts of matters including their own compensation. Judges and justices, on the other hand, are not afforded that opportunity. They have no seat at the bargaining table and, in fact, are precluded from participating in politics. The judicial branch therefore depends on the good faith of the other two branches to provide sufficient funding to fulfill its constitutional responsibilities. Given its unique place in the constitutional scheme, it is imperative that the legitimate needs of the judicial branch receive the appropriate respect and attention. This cannot occur if the Judiciary is used as a pawn or bargaining chip in order to achieve ends that are entirely unrelated to the judicial mission.

For instance, the Constitution prohibits legislators from increasing *or* decreasing their own salaries during their two-year term of office, but there is no such prohibition against the Legislature addressing judicial compensation at any time. Moreover, state legislators are part time and may supplement their income through committee assignments, leadership positions and other outside employment. Judges are constitutionally forbidden from engaging in any employment that would interfere with their judicial responsibilities (*see* NY Const, art VI, § 20 [b] [4]). But by failing to consider judicial compensation independently of legislative compensation, the State defendants have imposed upon the Judiciary the same restrictions that have been imposed on the Legislature, and have blurred the line between the compensation of the two branches, thereby threatening the structural independence of the Judiciary.

The State defendants assert that it is within their legislative rights to consider judicial compensation not on the merits but relative to unrelated policy initiatives. But they overlook the fact that they are treating judicial compensation—which falls within the scope of their constitutional duties—as if it were merely another government program appropriation as opposed to compensation for members of a coequal branch.

We do not attribute the State defendants' failure to increase judicial compensation to any nefarious purpose. Indeed, it is not necessary to consider, or find, the existence of any improper motive. All parties agree that a salary increase is justified and, yet, those who have the constitutional duty to act have done nothing to further that objective due to disputes unrelated to the merits of any proposed increase. This inaction not only impairs the structural independence of the Judiciary, but also deleteriously affects the public at large, which is entitled to a well-qualified, functioning Judiciary (*see O'Donoghue v United States*, 289 US 516, 533 [1933] [prohibition against diminution is to attract competent people to the bench, promote independence of the Judiciary, and for the public interest]).

It must be remembered that the Separation of Powers Doctrine

> "is a *structural safeguard* rather than a remedy to be applied only when specific harm, or risk of specific harm, can be identified. In its major features . . . it is a prophylactic device, establishing high walls and clear distinctions because low walls and

vague distinctions will not be judicially defensible in the heat of interbranch conflict" (*Plaut v Spendthrift Farm, Inc.*, 514 US 211, 239 [1995]).

■■ Here, the allegations by the *Maron* petitioners are sufficient to state a separation of powers claim. As that case is here before us on a CPLR 3211 motion to dismiss, our corrective action is limited to a reinstatement of that cause of action. In *Larabee* and *Chief Judge*, the procedural posture of the cases is not so limiting and we may now issue a declaration. We hold that under these circumstances, as a matter of law, the State defendants' failure to consider judicial compensation on the merits violates the Separation of Powers Doctrine.

■ However, when "fashioning specific remedies for constitutional violations, we must avoid intrusion on the primary domain of another branch of government" (*Campaign for Fiscal Equity, Inc. v State of New York*, 8 NY3d 14, 28 [2006]). Indeed, deference to the Legislature—which possesses the constitutional authority to budget and appropriate—is necessary because it is "in a far better position than the Judiciary to determine funding needs throughout the state and priorities for the allocation of the State's resources" (*id*. at 29). The Judiciary may intervene in the state budget "only in the narrowest of instances" (*Wein v Carey*, 41 NY2d 498, 505 [1977]), and we do not believe that it is necessary here to order specific injunctive relief. When this Court articulates the constitutional standards governing state action, we presume that the State will act accordingly.

### Failure to Provide Adequate Compensation (*Chief Judge*)

The *Chief Judge* plaintiffs make a separation of powers claim not raised by the *Maron* petitioners or *Larabee* plaintiffs: the Separation of Powers Doctrine requires that the State defendants provide the Judiciary with "adequate judicial compensation" and, because judicial salaries are constitutionally inadequate, the State defendants have breached their constitutional duty. The constitutional inadequacy of judicial salaries, the *Chief Judge* plaintiffs posit, threatens to impair the Judiciary's ability to function as a coequal branch.

■■ The Compensation Clause was enacted to preserve judicial independence, and we agree with the conclusion of high courts in other jurisdictions that this is dependent, in part, on judges receiving adequate compensation (*see Glancey v Casey*, 447 Pa 77, 86, 288 A2d 812, 816 [1972] ["it is the constitutional

duty and the obligation of the legislature, in order to insure the independence of the judicial . . . branch of government, to provide compensation adequate in amount and commensurate with the duties and responsibilities of the judges involved"]). Moreover, adequate judicial compensation is necessary to ensure that the public will have its matters heard by competent judges (*see* Judiciary Constitutional Convention of 1921: Report of the Legislature, at 29, *supra*) and that judges will be free to issue decisions in accordance with the law without fear of retribution by the other two branches of government. Therefore, we reject the State defendants' claim that the Compensation Clause's language that compensation "shall not be diminished" is the opposite of an "adequate compensation" guarantee. Even counsel for the State defendants in *Larabee* concede that judicial compensation "could be so low that it could be constitutionally objected to."

The *Chief Judge* plaintiffs posit that the current salaries of Judiciary Law article 7-B judges and justices are inadequate when compared to other legal positions in the public and private sectors. This argument is one that is best addressed in the first instance by the Legislature. All of the State defendants have conceded, at one point or another, that judicial compensation must be increased. We anticipate that our holding today will permit them to consider, in good faith, judicial salary increases on the merits.

The Legislature might find the record compiled in the *Chief Judge* case to be helpful. There, plaintiffs demonstrate—without rebuttal from the State—that, in real value, New York judges' salaries now rank below judicial salaries in other states and the Federal Judiciary, despite the complexity of legal issues presented in New York—a world economic center—and the burgeoning case load faced by New York judges.

The argument for a cost-of-living increase is not that, in some objective sense, New York judges do not earn a living wage. Judges made no such argument when this litigation commenced in much better economic times and certainly do not press such a contention now. The claim is that, due to the lack of a cost-of-living increase for more than 11 years, judges no longer earn salaries that are appropriate given the significance of their position in our tripartite form of government and the role they play in ensuring the rights of all members of society. That role has increased substantially since the last compensation adjustment. For instance, the Judiciary's workload has increased by 10%

over the past four years alone. Since 2005, Family Court's workload has increased 16%, civil filings in Supreme Court have increased more than 14%, and the caseloads in the New York City Civil Courts and those city courts outside of New York City have risen by 13% and 17%, respectively. Moreover, state courts handle over 90% of the filings as compared to the less than 10% handled by our federal courts.

Judicial salaries need not be exorbitant, but they must be sufficient to attract well-qualified individuals to serve. Otherwise, only those with means will be financially able to assume a judicial post, negatively impacting the diversity of the Judiciary and discriminating against those who are well qualified and interested in serving, but nonetheless unable to aspire to a career in the Judiciary because of the financial hardship that results from stagnant compensation over the years.

## VI. Conclusion

It is unfortunate that this Court has been called upon to adjudicate constitutional issues relative to an underlying matter upon which all have agreed; namely, that the Judiciary is entitled to a compensation adjustment. By ensuring that any judicial salary increases will be premised on their merits, this holding aims to strike the appropriate balance between preserving the independence of the Judiciary and avoiding encroachment on the budget-making authority of the Legislature. Therefore, judicial compensation, when addressed by the Legislature in present and future budget deliberations, cannot depend on unrelated policy initiatives or legislative compensation adjustments. Of course, whether judicial compensation should be adjusted, and by how much, is within the province of the Legislature. It should keep in mind, however, that whether the Legislature has met its constitutional obligations in that regard is within the province of this Court (*see Marbury v Madison*, 1 Cranch [5 US] 137, 177 [1803]). We therefore expect appropriate and expeditious legislative consideration.

Accordingly,

In *Maron*, the order of the Appellate Division should be modified, without costs, by remitting to Supreme Court for further proceedings in accordance with this opinion, and as so modified, affirmed.

In *Larabee*, the order of Appellate Division should be modified, and in *Chief Judge*, the judgment of Supreme Court and

the order of the Appellate Division should be modified, without costs, by granting judgment declaring that under the circumstances of these cases, as a matter of law, the State defendants' failure to consider judicial compensation on the merits violates the Separation of Powers Doctrine, and by allowing for the remedy discussed in this opinion, and, as modified, affirmed.

SMITH, J. (dissenting). I share my colleagues' dismay at the Legislature's behavior in dealing with, or rather failing to deal with, judges' salaries, but I cannot agree that any of its actions or inactions are unconstitutional.

The majority holds that the Legislature has violated the separation of powers by its failure to consider judicial salaries "based upon an objective assessment of the Judiciary's needs" (majority op at 259) or to give "appropriate respect and attention" to the needs of the judicial branch (majority op at 259). Undoubtedly, all branches of government should evaluate each other's needs objectively and treat each other with respect, but I know no warrant for thinking that objectivity and respect are commanded by the Constitution. These qualities are so amorphous and subjective that they can provide no workable standard for constitutional decision-making.

As the Appellate Division in *Maron* put it, "nothing in the NY Constitution forbids the political branches from engaging in politics when carrying out their political functions" (*Matter of Maron v Silver*, 58 AD3d 102, 122 [3d Dept 2008]). Separation of powers is violated not when one of the three branches acts irresponsibly—that happens all the time—but when one threatens the place of another in the constitutional scheme. Thus I might well agree that separation of powers was violated if the actual or imminent effect of the Legislature's conduct were to make the recruitment of competent judges impossible, or to render judges subservient to the other branches of government. I need not expand on this point; it is well explained both in the Appellate Division's *Maron* opinion (58 AD3d at 116-123) and in *Atkins v United States* (556 F2d 1028, 1054-1057 [Ct Cl 1977], *cert denied* 434 US 1009 [1978]), a federal case involving facts much like those before us now.

Bad as the present situation is, neither of the disastrous conditions I have mentioned—a bench that cannot be filled with competent people, or one whose financial dependence makes it the slave of the Legislature—exists or is close to existing. It is a depressing truth that some of our finest judges have left, or are

thinking of leaving, their jobs because of the Legislature's failure to deal with the salary issue; but it is also true that there are still plenty of able judges, and plenty of able people who would willingly become judges, even at today's pay levels. And I have seen no evidence of judicial subservience to the Legislature; the problem, if there is one, is to restrain judges' understandable displeasure with that branch of our government.

I would affirm the Appellate Division order in *Maron*, and would modify the orders in *Larabee* and *Chief Judge* to dismiss all claims in the complaints.

Judges CIPARICK, GRAFFEO, READ and JONES concur with Judge PIGOTT; Judge SMITH dissents and votes to affirm in a separate opinion; Chief Judge LIPPMAN taking no part.

In *Matter of Maron v Silver*: Order modified, without costs, by remitting to Supreme Court, Albany County, for further proceedings in accordance with the opinion herein.

In *Larabee v Governor of the State of N.Y.*: Order modified, without costs, by granting judgment declaring that, under the circumstances of this case, as a matter of law, the State defendants' failure to consider judicial compensation on the merits violates the Separation of Powers Doctrine, and by allowing for the remedy discussed in the opinion herein, and, as so modified, affirmed.

In *Chief Judge of the State of N.Y. v Governor of the State of N.Y.*: On plaintiffs' appeal and defendants' cross appeal, judgment of Supreme Court and order of the Appellate Division modified, without costs, by granting judgment declaring that, under the circumstances of this case, as a matter of law, the State defendants' failure to consider judicial compensation on the merits violates the Separation of Powers Doctrine, and by allowing for the remedy discussed in the opinion herein, and, as so modified, affirmed.