OPINION OF THE COURT
Richard M. Platkin, J.
Petitioners are members of the New York State Board of Parole (Parole Board) who receive retirement benefits from the State of New York. By this proceeding, they seek an order com *686 pelling the Governor to apply to the New York State Civil Service Commission for waivers that would allow them to receive undiminished retirement allowances in addition to their full salaries from public employment. Respondents move to dismiss the petition for failure to state a claim upon which relief can be granted.
Background
According to the petition, Michael Hagler, Sally A. Thompson and Patrick Gallivan were appointed to serve as full-time members of the Parole Board, for which they earn salaries of $101,600 per year. Each petitioner also receives retirement benefits from the State of New York based upon prior employment with state and local law enforcement agencies.
In general, when a member of the retirement system returns to public service, the member’s pension benefits are suspended (see Retirement and Social Security Law § 101 [a]; Civil Service Law § 150). However, Retirement and Social Security Law § 212 allows retirees to earn up to $30,000 per year without affecting their receipt of retirement benefits. In addition, Retirement and Social Security Law § 211 authorizes the issuance of a waiver that allows a retiree to earn income from public employment in excess of the section 212 cap without causing the member’s pension benefits to be suspended or diminished.
In 2008, the State Legislature amended section 211 to establish additional criteria for issuance of a waiver (see L 2008, ch 640). In his approval message, the Governor stated that the new legislation would, among other things, serve to protect the public “from improper [1] double-dipping’, especially in these trying economic times” (Governor’s Approval Mem, Bill Jacket, L 2008, ch 640, at 3 [annexed as exhibit A to petition]). However, the 2008 amendments to section 211 do “not apply to individuals to whom waivers were granted prior to the effective date” of the new legislation (ch 640, § 13).
Petitioners previously were granted section 211 waivers prior to the effectiveness of chapter 640. However, since section 211 waivers are limited to a term of no more than two years (Retirement and Social Security Law § 211 [2] [b]), each petitioner seeks the issuance of a new waiver. Petitioners further allege, upon information and belief, that the chair of the New York State Division of Parole (Division of Parole) “has requested approval by the Governor’s office of her desire to have Petitioners receive another § 211 waiver” (verified petition 11 34).
By letter dated May 13, 2010, respondent Valerie Grey, the Director of State Operations at the time, advised petitioners *687 that the Governor’s office had declined to apply for section 211 waivers on their behalf. Her correspondence explained that, pursuant to an executive chamber policy dated April 1, 2009, section 211 waivers will not be sought for high-level executive personnel unless the agency can demonstrate with specificity that (1) hiring or retaining the individual is necessary for public safety, (2) the agency will be unable to recruit or retain the individual absent a waiver, and (3) the agency cannot identify a comparably qualified nonretiree for the position.
By this proceeding, petitioners contend that the Governor and his staff are inappropriately usurping the prerogatives of the Civil Service Commission: “All the Governor’s office has to do is forward the [section 211 waiver] application to the State Civil Service Commission. It is the Civil Service Commission, not the Governor’s office, which has the authority to determine whether or not § 211 Waivers are granted” (verified petition 1135).
Petitioners further maintain that their retention on the Parole Board is necessary to protect public safety and that the other two criteria articulated by the Governor’s office in the challenged determination have no applicability to them (id. Uli 38-39). Petitioners explain that the latter two criteria “are the same as [t]he provisions that were added to § 211 by the amendments] of 2008. These provisions do not apply to Petitioners as they were individuals who were granted waivers prior to the effective date of the act” (id. If 39).
Finally, petitioners allege that the criteria applied by respondents “make absolutely no sense in the context of a multiyear appointment which has been confirmed by the New York State Senate, because the Division of Parole has absolutely no authority to recruit anyone other than Petitioners during their term of office” (id. 1i 39).
Respondents move to dismiss the petition for failure to state a cause of action. This decision, order and judgment follows.[1]
*688 Analysis
“Our Legislature has for over a half century evinced a strong public policy in favor of the suspension of retirement benefits of a person who after retiring accepts an office in the civil service of the State. Although exceptions have been made to this general proscription, it is clear that such exceptions were enacted for limited purposes and were not meant to abrogate or dilute the long-standing and overriding State policy to prohibit the receipt of retirement benefits and salary at the same time which could constitute an abuse of the public fisc” (Matter of Baker v Regan, 68 NY2d 335, 341 [1986] [citations omitted]).
In arguing that the Governor’s role in the section 211 waiver process is limited to “forward[ing] the [waiver] application to the State Civil Service Commission” (verified petition 1Í 35), petitioners misconstrue the text and structure of section 211 in several important respects and arrive at conclusions that are fundamentally inconsistent with the State’s “long-standing and overriding” policy against double-dipping.
As an initial matter, the decision whether or not to apply for section 211 waivers for Parole Board members is committed to the Governor, not the Division of Parole or its chair. This conclusion follows from the plain language of section 211, which provides that a waiver “may be granted only on the written request of the prospective employer of such retired person” (Retirement and Social Security Law § 211 [2] [b]). It is apparent from the constitutional and statutory structure of the executive branch of state government that the Governor is petitioners’ employer. After all, the Governor is the appointing authority for members of the Parole Board (see verified petition 1Í1Í15, 17; Executive Law § 259-b [1]), and the Division of Parole and the Parole Board are constituent entities within the executive department (see Executive Law §§ 259, 259-b), of which the Governor is the constitutional and statutory head (NY Const, art iy § 1; Executive Law § 30). Accordingly, since the chair of the Division of Parole is not petitioners’ “employer,” her alleged support for petitioners’ efforts to obtain section 211 waivers is of little or no moment.
Moreover, section 211 does not compel a public employer to apply for a waiver on behalf of a retiree. Rather, the statute vests broad discretion in the employer to determine whether a waiver is necessary and, if so, to make an appropriate applica *689 tion to the Civil Service Commission (or other statutorily designated oversight entity). This is clear from the language of section 211 that makes the employer’s “written request” a condition precedent to the issuance of a waiver and which requires the employer to support a waiver request with “detailed reasons therefor related to the standards set forth [in the statute]” (Retirement and Social Security Law § 211 [2] [b]).
Thus, under the version of section 211 in effect immediately prior to chapter 640, which is the legal standard applicable to petitioners (see L 2008, ch 640, § 13), the Governor would be required to provide the Civil Service Commission with “detailed reasons” for concluding, inter alia, that: there is a continued “need” for petitioners’ services as members of the Parole Board; “there are not readily available for recruitment [other] persons qualified” to serve on the Parole Board; and petitioners’ continued “employment is in the best interests of the government service” (Retirement and Social Security Law former § 211 [2] [b] [2]-[4]). The broad, discretionary nature of these statutory criteria, the obligation of the public employer to justify a waiver request by reference to said criteria, and the fact that waiver requests must originate with the public employer all support the conclusion that section 211 represents a discretionary tool to assist public employers in managing their work force, not the source of an individual entitlement for retirees to “double-dip” over their employer’s objection.
As the decision of a public employer to apply or reapply for a section 211 waiver for a retiree constitutes a purely discretionary function, so much of the petition as seeks relief in the nature of mandamus to compel must be rejected. “A CPLR article 78 proceeding seeking mandamus to compel the performance of a specific duty applies only to acts that are ministerial in nature and not those that involve the exercise of discretion” (Matter of Maron v Silver, 14 NY3d 230, 249 [2010]).
Insofar as petitioners also challenge the Governor’s exercise of discretion in refusing to apply for waivers on their behalf, they must demonstrate that his action was arbitrary, capricious or affected by an error of law (see CPLR 7803 [3]). For the reasons that follow, the court concludes that, even accepting the factual allegations of the petition as true, petitioners have failed to demonstrate a right to the requested relief.
The court begins with petitioners’ contention that the May 13, 2010 determination erroneously subjected petitioners to the *690 more stringent waiver standards put in place by chapter 640. The challenged determination relies upon an executive chamber policy that was communicated to all agency heads on April 1, 2009. The executive policy memorandum explained that, while chapter 640 “allows current recipients of 211 waivers to apply for continuations of such waivers under the prior legal standard,” the new legislation “does not deprive agencies of the discretion to seek, or not to seek, a waiver for a particular employee” (Mem from Dennis E Whalen, Director of State Operations, to Heads of State Agencies and Fublic Authorities, Apr. 1, 2009, http://www.cs.state.ny.us/commission/directive.pdf, cached at http://www.nycourts.gov/reporter/webdocs/directive.pdf [respondents’ exhibit A]). Accordingly, the Director of State Operations at the time, Dennis E Whalen, advised that “211 waivers generally should not be sought for high-level, executive personnel” absent proof that an exemption “is necessary to protect public safety or for other exceptional circumstances” (id.).
The three criteria cited in respondent Grey’s letter of May 13, 2010 — (1) hiring or retaining the retiree is necessary for public safety, (2) the agency will be unable to recruit or retain the retiree absent a waiver, and (3) the agency cannot identify a comparably qualified nonretiree for the position — were drawn directly from the April 1, 2009 policy memorandum. And, while petitioners allege that respondents improperly relied upon the new waiver criteria established by chapter 640, it is apparent that the tripartite test outlined in the Grey letter implements the pre-chapter 640 version of section 211, which focuses on whether there is a continued “need” for petitioners’ services on the Farole Board and whether other “persons qualified” are available for recruitment in place of the retiree (Retirement and Social Security Law former § 211 [2] [b] [2]-[3]). Accordingly, it is clear that respondents did not apply chapter 640 to petitioners.[2]
*691 Further, while petitioners maintain that the second and third criteria cited in the May 13, 2010 determination “make absolutely no sense in the context of a multi year appointment which has been confirmed by the New York State Senate, because the Division of Parole has absolutely no authority to recruit anyone other than Petitioners during their term of office” (verified petition If 40), this argument is premised, at least in part, upon petitioners’ misapprehension regarding the identity of their employer. It is the Governor, not the Division of Parole, who would be responsible for replacing petitioners if they were unwilling to continue their public employment without new section 211 waivers. Reading the May 13, 2010 letter as a whole, its clear import is that the Governor was unwilling to request section 211 waivers for petitioners unless it were established to his satisfaction that their retention on the Parole Board is necessary for public safety and comparably qualified nonretirees could not be found to serve despite efforts to identify the same.[3] Petitioners have failed to allege evidentiary facts upon which the court could conclude that the Governor acted irrationally or unreasonably in taking this position, which largely tracks the relevant statutory framework (Retirement and Social Security Law former § 211 [2] [b] [2]-[4]).
In reaching the foregoing conclusion, the court is cognizant of the fact that petitioners are serving fixed terms of office as a result of appointments by prior Governors. As such, petitioners are protected from removal from office other than for cause and are entitled to all of the other benefits and protections associated with fixed-term appointments. Nothing herein or in the challenged determination is to the contrary. The only issue before the court is whether the Governor can be compelled to apply for waivers that would allow petitioners to receive an undiminished retirement allowance in addition to their full salary from public employment. And, in refusing to apply for such waivers, the Governor permissibly considered the prospect that petitioners may choose not to continue their public employment absent the issuance of new section 211 waivers, thus implicating the issues of whether petitioners’ continued service, on the Parole Board is necessary to protect public safety and, if so, *692 whether comparably qualified nonretirees could be recruited to replace them.
Finally, the court notes that petitioners have failed to allege any other facts demonstrating that the Governor acted arbitrarily or irrationally in refusing to apply for section 211 waivers on their behalf. The Governor has determined that, “in light of the present economic situation,” high-ranking executive branch officials should not be “double-dipping” — collecting a substantial salary from public employment and at the same time receiving an undiminished retirement allowance — except where waivers are necessary to retain essential employees who cannot be replaced by comparably qualified nonretirees or in other extraordinary circumstances. This exercise of discretion by the Governor is in accord with the long-standing public policy “prohibit[ing] the receipt of retirement benefits and salary at the same time which could constitute an abuse of the public fisc” (Matter of Baker v Regan, 68 NY2d at 341) and is entirely consistent with the applicable statutory framework (see Retirement and Social Security Law former § 211 [2] [b] [2]-[4]; Matter of Incorporated Vil. of Nissequogue v New York State Civ. Serv. Commn., 220 AD2d 53 [3d Dept 1996]).
Conclusion
In sum, the court concludes that petitioners have failed to demonstrate a right to compel the Governor to apply for section 211 waivers on their behalf. Nor have petitioners alleged facts demonstrating that the Governor’s refusal to apply for section 211 waivers was made in violation of law or otherwise constitutes an abuse of the Governor’s broad executive discretion to manage the State’s finances and its work force, including paid board positions, in the manner that he deems appropriate.[4]
Accordingly, it is ordered that respondents’ motion to dismiss is granted; and it is further ordered, adjudged and decreed that the petition is dismissed.

. And, even if the criteria in the Grey letter were drawn from chapter 640, which they are not, petitioners have failed to demonstrate that the Governor’s discretion under the prior version of section 211 could not be informed by the additional statutory criteria mandated by chapter 640. The evident purpose of chapter 640 was to restrict the issuance of section 211 waivers by adding additional criteria that must be established in order for a waiver to be requested by the public employer and granted by the Civil Service Commission. There is absolutely nothing in the text, structure or legislative history of chapter 640 that reveals an intention to divest public employers of the discretion to decline to apply for waivers under more rigorous self-imposed standards of restraint.

. In this connection, the court notes that while petitioners allege that “service on the New York State Board of Parole is a necessary public safety position” (verified petition 1Í 38), the issue raised in the first point of the Grey letter is whether petitioners’ retention as Parole Board members is necessary to protect public safety, a somewhat different inquiry.

. The court has considered petitioners’ remaining arguments and contentions and finds them unavailing.