defendants' objection, to interviews between her and Mr. Healy in the course of which it is claimed that the contract sought to be enforced was entered into; the contention being that, under section 829 of the Code of Civil Procedure, this witness was incompetent to testify to a conversation which took place between herself and the defendants' intestate. We find ourselves unable to assent to this proposition. Mrs. Chichester was in no disqualifying sense "interested in the event" of the action. Eisenlord v. Clum, 126 N. Y. 552, 27 N. E. 1024; Connelly v. O'Connor, 117 N. Y. 91, 22 N. E. 753. And, while she was undoubtedly the medium through whom the contract was entered into on behalf of her infant child, yet it cannot be said that she is the person "through or under whom" the plaintiff derives her interest or title "by assignment or otherwise," as that term is used in the section above mentioned. The subject-matter of the action is the estate of Joshua Healy, deceased; and whatever interest the plaintiff has in that estate she derived from Joshua Healy, and not from her mother. Godine v. Kidd, supra. Our conclusion, upon the whole case, is that it was properly disposed of by the trial court, and that the judgment appealed from should consequently be affirmed.

Judgment affirmed, with costs payable out of the estate. All concur.

---

## CZAMOWSKY v. CITY OF ROCHESTER.

(Supreme Court, Appellate Division, Fourth Department. November 20, 1900.)

1. MUNICIPAL CORPORATIONS—ACTIONS—VENUE—VALIDITY OF STATUTE.

Laws 1898, c. 182, § 461, as amended by Laws 1899, c. 581, § 37, requiring all actions against a city of the second class to be brought in the county in which it is situated, is not in violation of Const. art. 3, § 18, prohibiting the legislature from passing private or local laws for change of venue in civil or criminal cases, or granting any private corporation, association, or individual any exclusive immunity or franchise whatever.

2. SAME—CHANGE OF VENUE—COURTS—JURISDICTION.

Laws 1898, c. 182, § 461, as amended by Laws 1899, c. 581, § 37, which requires actions against a city of the second class to be brought in the county in which such city is situated, does not defeat the jurisdiction of the supreme court over motions for change of venue, since the act does not take away the power of the court to change the venue for the convenience of witnesses.

3. SAME.

Code Civ. Proc. § 982, requires actions of ejectment and actions to compel the determination of a claim to real property or in any manner affecting any interest in real property to be brought in the county in which the property is situated. After the passage of such act, Laws 1898, c. 182, § 461, as amended by Laws 1899, c. 581, § 37, was passed, which required actions against a city of the second class to be brought in the county in which the city was situated. Held, that an action against such a city to recover possession of real estate situated in another county, of which the city was in possession, could be brought in the latter county, since the latter statute was only intended to apply to transitory actions.

Appeal from special term, Monroe county.

Action by Charles Czamowsky against the city of Rochester to recover possession of real property. From an order denying defendant's motion for a change of venue, defendant appeals. Affirmed.

The action was commenced on the 15th day of February, 1900, to recover possession of certain real property situate in the town of Lima, county of Livingston, N. Y., and $25 for withholding the same, it being alleged that the plaintiff is the owner of the fee, and that on or about the 1st day of July, 1896, the defendant, through its agents and servants, unlawfully, and without any right or authority so to do, entered upon said premises, and erected thereon six poles, with four braces upon each, stretched wires thereon, and is in the actual possession and occupancy of the same. The venue of the action was laid in the county of Livingston. The defendant demanded that the venue be changed to Monroe county upon the ground that it was the proper county, which was refused. Thereupon a motion was made upon that ground for a change of venue, and the order appealed from was made denying such motion.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

P. M. French, Corp. Counsel, for appellant.
J. K. Smith, for respondent.

McLENNAN, J. The city of Rochester has a population, according to the last state enumeration, of more than 50,000 and less than 250,000, and is, therefore, a city of the second class. Const. N. Y. art. 12, § 2. The city of Rochester is situated in the county of Monroe. Section 461 of chapter 182 of the Laws of 1898, as amended·by section 37 of chapter 581 of the Laws of 1899, and which relates to the government of cities of the second class, provides as follows:

"The place of trial of all actions or proceedings against the city, or any of its officers, boards or departments, shall be the county in which the city is situated."

Section 982 of the Code of Civil Procedure provides:

"Each of the following actions must be tried in the county in which the subject of the action, or some part thereof, is situated: an action of ejectment; for the partition of real property; for dower; to foreclose a mortgage upon real property, or upon a chattel real; to compel the determination of a claim to real property; for waste; for a nuisance; or to procure a judgment directing a conveyance of real property; and every other action to recover, or to procure a judgment, establishing, determining, defining, forfeiting, annulling, or otherwise affecting an estate, right, title, lien or other interest in real property or a chattel real."

The question, therefore, arises: Is the place of trial of the action at bar to be determined by reference to the words of the charter provision, or is the section of the Code controlling? So far as we have been able to discover, the question is new, and has never been passed upon by the courts. The provision of the charter is not violative of section 18 of article 3 of the state constitution, which provides:

"The legislature shall not pass a private or local bill in any of the following cases: * * * Providing for changes of venue in civil or criminal cases; * * * granting to any private corporation, association or individual any exclusive immunity or franchise whatever."

It has been uniformly held that the legislature has power to designate in what counties certain actions shall be tried. City of Brooklyn v. City of New York, 25 Hun, 612; Getman v. City of New

York, 66 Hun, 236, 21 N. Y. Supp. 116; Lyman v. Matty, 35 App. Div. 227, 54 N. Y. Supp. 765. A statute designating the counties in which certain actions shall be tried does not take away the power of the court to change the place of trial for the convenience of witnesses, and therefore does not deprive the supreme court of any jurisdictional powers. People v. Coughtry, 58 Hun, 245, 12 N. Y. Supp. 259, affirmed in 125 N. Y. 723, 26 N. E. 756. Indeed, the adoption of section 982 of the Code, upon which the counsel for the respondent relies, was but an exercise by the legislature of the same power which it assumed to exercise in passing the charter provision in question. It is well settled that where two statutes are in conflict, and so that both cannot stand, the one last passed will control, and will be deemed to have repealed the former. Leonard v. Ehrich, 40 Hun, 460–463. We are thus brought to the consideration of the only remaining and the important question: Did the legislature, by the passage of the charter provision in question, intend to repeal the section of the Code which provides, in brief, that all actions affecting the title to real property must be tried in the county in which such property, or some part of it, is situated, in case a city of the second class is a party to such an action. That the provisions of the statutes in question are in conflict, if the language alone is considered, is apparent. One provides that an action of ejectment must be tried in the county where the property, or some part of it, is located; the other requires that such action, in case a city of the second class is a defendant, shall be tried in the county in which such city is located, even although the property be located in another or distant county. As an aid in reaching a correct answer to the question presented, we may have recourse to certain rules of interpretation declared by the courts from the earliest times to be applicable in the construction of conflicting statutes. One of such rules is stated in Suth. St. Const. § 138, as follows:

"Subsequent legislation repeals previous inconsistent legislation, whether it expressly declares such repeal or not. In the nature of things, it would be so, not only on the theory of intention, but because contradictions cannot stand together. The intention to repeal, however, will not be presumed, nor the effect of repeal admitted, unless the inconsistency is unavoidable, and only to the extent of the repugnance. Implied repeals are not favored."

In the case of Bowen v. Lease, 5 Hill, 221–226, Chief Justice Nelson stated the rule as follows:

"As laws are presumed to be passed with deliberation, and with full knowledge of all existing ones on the same subjects, it is but reasonable to conclude that the legislature, in passing a statute, did not intend to interfere with or abrogate any former law relating to the same matter, unless the repugnancy between the two is irreconcilable. Hence a repeal by implication is not favored; on the contrary, courts are bound to uphold the prior law if the two acts may well subsist together."

In McCartee v. Society, 9 Cow. 437, Judge Woodworth said:

"It is a well-settled rule that, where there is a discrepancy or disagreement between two statutes, such exposition should be made as that both may stand together. * * * It is laid down in 19 Vin. Abr. 525, pl. 132, that repeals by implication are things disfavored by the law, and never allowed of but where inconsistency and repugnancy are plain and unavoidable; for these repeals carry along with them a tacit reflection upon the legislators that they

should ignorantly, and without knowing it, make one act repugnant to and inconsistent with another; and such repeals have been ever interpreted so as to repeal as little of the preceding law as possible."

The rule was approved in Williams v. Potter, 2 Barb. 316, and has been repeatedly reiterated and invariably approved by the courts from that time until the present.

Another rule stated by Sutherland in his work on Statutory Construction (section 152) is:

"In an endeavor to harmonize statutes seemingly incompatible, to avoid repeal by implication, a court will reject absurdity as not enacted, and accept with favorable consideration what is reasonable and convenient. In cases of doubt, repeal of a statute or of the common law may be deemed intended in favor of convenience. An argument based on inconvenience is forcible in law. No less so is one to avoid what is unjust or unreasonable. Like considerations of what is convenient, just, or reasonable, when they can be invoked against the implication of repeal, will be still more potent. The act being silent as to repeal and affirmative, it will not be held to abrogate any prior law which can reasonably and justly operate without antagonism."

In re Evergreens, 47 N. Y. 218, Chief Judge Church lays down the rule that in the interpretation of statutes—

"The real intention will prevail over the literal sense of the terms; that the context, the occasion, and the objects of the law are to be considered; that a statute will not be held repealed by implication if a reasonable construction will enable it to stand consistently with the alleged repealing statute; that laws will not be given a retroactive effect unless required by express language, and not then to destroy vested rights; and, finally, that the intention is to be presumed in accordance with reason and good discretion."

In Smith v. People, 47 N. Y. 330, the headnote is as follows:

"A statute should not be so construed as to work a public mischief, unless required by words of the most explicit and unequivocal import. In the construction of statutes effect must be given to the intent of the legislature whenever it can be discerned, though such construction seem contrary to the letter of the statute."

In the case of Chamberlain v. Chamberlain, 43 N. Y. 424, the court, in interpreting two statutes which, by their language, were in conflict, approved the rule laid down in Bowen v. Lease and in McCartee v. Society, supra, and said:

"There being no express repeal of the general provision of law, or repudiation of the uniform policy of the state, the intent of the legislature to do either cannot be implied. * * * The courts ought not to impute an intent to the legislature not clearly expressed in direct hostility to the traditions and policy of the past."

These numerous cases have been referred to as authority for the proposition that if it is found upon examination that the repeal of section 982 of the Code of Civil Procedure, as applied to actions to which a city of the second class is a party, would cause serious inconvenience and confusion in the administration of justice, would be inequitable, and cause injustice to litigants, it should be held that the legislature did not intend such repeal, especially if such repeal would result in a course of procedure in direct hostility to the traditions and policy of the state during its entire history, in respect to the place of trial of actions affecting the title to real property. At common law such an action was triable in the county

in which the property was situated. That rule was made a part of the statute law early in the history of the state. It was incorporated in the first Code of Procedure adopted by the legislature, and has ever since been retained as a part of the statutory law. The abrogation of the rule thus long established would cause serious inconvenience and confusion. In an action of ejectment a notice of pendency may be filed by the plaintiff in the clerk's office of the county in which the property is situated, or he may not file such notice, and proceed to trial, and, in case a judgment is recovered in favor of the plaintiff, it is made binding upon all parties to the action from the time of its entry. Under the provisions of the Code such judgment must be entered in the office of the clerk of the county in which the action is tried, and no one is charged with the duty of causing a transcript of it to be filed in any other county. In case, then, an action of ejectment relating to real property situate in Queens county is brought against the city of Rochester, located in Monroe county, the judgment determining the rights of the parties to that action would be entered in the clerk's office of Monroe county, and the records in Queens county might contain no reference to such action or the determination therein. Another party claiming to be interested in such property, and who wished to have such interest determined by the courts, would have no means of knowing of the adjudication already had, except by searching the records of the clerk's office in every county in which a city of the second class is located. The records in the county where the property is situated would not necessarily contain any record of the proceedings or of the adjudication, no matter to how great an extent it affected the title to the property. In an action of partition, in a case where actual partition must be made, by the interlocutory judgment the court is required to appoint commissioners, freeholders of the county in which the action is tried, to make such partition. Again, in case such property is located in Queens county, and the city of Rochester is a necessary party, and the venue laid in the county of Monroe, commissioners appointed would be required to travel the entire length of the state to examine the property in the performance of their duty as such commissioners; and the judgment of partition, when made, would not necessarily appear in the office of the clerk of the county in which the property was situated, and could not be ascertained or known by any other interested person except by examining the records of all the counties in which a city of the second class is located. These suggestions, we think, sufficiently demonstrate that the adoption of the rule contended for by the appellant would cause inconvenience, is unreasonable, and would lead to unjust and absurd results.

It will hardly be useful to call attention to the numerous cases in which the courts in this and other states have held that when two statutes are, by their terms, conflicting, the latter statute will not be deemed by implication to have repealed the former, when such repeal would result in inconvenience and confusion in the administration of justice, would be unjust and inequitable to litigants, and would change and overthrow a settled policy of the state long

continued. One case—Railroad Co. v. Ford, 53 Tex. 364—may be referred to. It appeared in that case that in 1874 the legislature of Texas passed an act which provided, in substance, that a railroad corporation might be sued in the county where the cause of action arose, or in any county where such corporation has an agency or representative, or in the county in which the principal office of such corporation is situated. Subsequently, but at the same session of the legislature, an act was passed which provided that "any public or private corporation  *  *  *  may be sued  *  *  *  in any court in this state in which the cause of action or a part thereof arose." Sess. Acts, 14th Leg. p. 31. It was held that the last act did not repeal the former, and that still an action might be brought against a railroad corporation in any county in which it had an agency or representative, or in the county in which the principal office of such corporation was situated.

Our conclusion is that by the passage of the provision in question, contained in the charter of cities of the second class, and which requires all actions against such cities to be tried in the counties in which they are respectively located, the legislature did not intend to change the provision of the section of the Code which provides, in substance, that all actions affecting the title to real property must be tried in the county in which such property is situated; that the legislature only intended, by the passage of the provision contained in the charter, to provide that all transitory actions brought against cities of the second class must be tried in the county in which such cities are located, and did not thereby intend to affect or change the place of trial of actions relating or pertaining to the title to real property. Thus construed, a useful and intelligent purpose in the passage of the provision of the charter is obtained, and the practice long established in respect to the trial of actions relating to real property, and which is interwoven with a large number of the provisions of the Code of Procedure, is not disturbed. It follows that the order appealed from should be affirmed, with costs.

Order affirmed, with $10 costs. All concur.