OPINION OF THE COURT
Miller, J.
At the time this lawsuit was commenced, more than a decade had passed since the plaintiffs and their colleagues in the New York State judiciary had received a pay raise authorized by the legislature. While caseloads continued to increase with each passing year, the compensation of New York jurists remained fixed (see An Overdue Raise, Albany Times Union, June 1, 2005). When adjusted for inflation and the cost of living, the compensation of New York State Supreme Court justices was found to be the lowest in the nation (see Final Report of the Special Commission on Judicial Compensation at 7 [Aug. 29, 2011], available at http://www.judicialcompensation.ny.gov/ assets/FinalReportSpecialCommissionJD.pdf [accessed Jan. 16, 2014]).
During this period of stagnant salaries, the plight of the judiciary was widely recognized, even outside of legal circles. Several dozen editorials in a variety of newspapers throughout the state repeatedly emphasized the pressing need for enacting pay increases for the judiciary (see They Deserve Better: Unanimous Support for Judicial Compensation Reform, available at [accessed Jan. 16, 2014]). In addition, professional groups in the legal community, civic and political organizations, educational institutions, and commercial entities across the State of New York expressed their similarly strong support for such long-overdue increases (see id.).
The situation deteriorated to the point that judges and justices, including some of the most respected appellate jurists in the state, felt compelled to resign from the judiciary, citing economic considerations (see e.g. Daniel Wise, Judge Resigns Second Department Over Wages, NYLJ, Sept. 20, 2011; Daniel Wise, Family Trumps Love of Law for Departing Justice, NYLJ, Nov. 15, 2010; Daniel Wise, Second Department Judge Quits Over Lack of a Raise, NYLJ, Aug. 4, 2009). In reaction to one such resignation, Chief Judge Jonathan Lippman was quoted as *84 stating, “ £[t]he judiciary is being torn down brick by brick and we are now losing the judges who shape our jurisprudence’ ” (Daniel Wise, Family Trumps Love of Law for Departing Justice, NYLJ, Nov. 15, 2010).
In the face of this threat to the judiciary’s existence as an independent and co-equal branch of the state government, and given the failure of the legislature to enact meaningful relief, members of the judicial branch understandably turned to the courts for recourse. In 2008 alone, three separate groups of jurists sought to hold the legislature accountable for its inaction through the implementation of litigation (see Justin S. Teff, The Judges V The State: Obtaining Adequate Judicial Compensation and New York’s Current Constitutional Crisis, 72 Alb L Rev 191 [2009]).
In one such case, Matter of Maron v Silver (14 NY3d 230, 261 [2010]), the Court of Appeals held that the legislature’s practice of linking full-time judicial salary increases to pay increases for part-time legislators was an unconstitutional infringement on the independence of the judiciary under the separation of powers doctrine. However, in deference to the legislature’s discretionary authority, the Court of Appeals refused to direct an increase injudicial compensation (see id. at 263).
In this case, the plaintiffs, duly elected or appointed judges or justices of the Unified Court System, seek a judgment declaring that the compensation of judges and justices of the Unified Court System of the State of New York was duly increased pursuant to Laws of 2009, chapter 51, § 3. The plaintiffs maintain that this legislation effected a pay raise for the judiciary because it set aside approximately $51 million for that purpose, and did not reference the need for any future legislation.
In navigating the legal issues presented by this appeal, we remain mindful of the distress caused by the legislature’s past failure to adequately compensate the judges and justices of this state and of the indignation engendered among those who felt such treatment unworthy of a co-equal branch of the government. We also do not fail to recognize the perception that an inherent conflict of interest is presented by a case in which the pecuniary interests of the justices deciding it are implicated. We are nevertheless compelled, by the Rule of Necessity, to determine the merits of this appeal. In so doing, we conclude that the compensation of judges and justices of the Unified Court System of the State of New York was not increased by the enactment of Laws of 2009, chapter 51, § 3. In reaching our de *85 termination we are guided by the language of the statute, the New York Constitution, and the numerous manifestations of legislative intent which demonstrate that the legislature did not increase judicial compensation through the enactment of the subject legislation, no matter how warranted such an increase may have been.
I. Background
The rate of judicial compensation in the State of New York, subject to certain limitations, has long been entrusted to the province of the legislative branch. The New York Constitution of 1846 provided that “[t]he judges of the Court of Appeals and justices of the Supreme Court shall severally receive . . . for their services, a compensation to be established by law” (1846 NY Const, art VI, § 7). Although the discretion of the legislature in this area was briefly limited through constitutional enactments that incorporated the specific salary schedules pertaining to each class of jurist directly into the constitution itself (see 1894 NY Const, art VI, § 12, as amended Nov. 2, 1909; Laws of 1909, Concurrent Resolutions of Senate and Assembly at 1799-1800), in 1925, the New York Constitution was again amended to grant the legislature the authority to increase judicial compensation through legislation (see 1925 NY Const, art VI, § 19).
Article VI, section 25 (a) of the New York State Constitution, known as the “Compensation Clause,” now provides, inter alia, that the compensation of judges and justices of the state “shall be established by law.” The Compensation Clause, construed “to give its provisions practical effect” (Ginsberg v Purcell, 51 NY2d 272, 276 [1980]), is a constitutional requirement that judicial compensation be set forth by the legislature through the enactment of affirmative legislation (see Matter of Maron v Silver, 14 NY3d at 249).
In the 50 years following the constitutional enactments of 1925, the legislature exercised its authority under the New York Constitution by periodically adjusting the salary schedules of various classes of judges and justices through the enactment of legislation (see L 1926, chs 94, 155; L 1929, ch 464; L 1947, chs 419, 462; L 1948, ch 591; L 1949, chs 45, 195; L 1950, ch 621; L 1952, ch 88; L 1957, ch 993; L 1975, chs 150, 152). It was through this legislation that the legislature fulfilled its constitutional mandate to ensure that the compensation of judges and justices of this state was “established by law” (NY Const, art VI, § 25 [a]).
*86 In 1979, the legislature enacted article 7-B of the Judiciary-Law (L 1979, ch 55; see Judiciary Law §§ 220-224). That article set forth the various salaries to be paid to the judges and justices of the Unified Court System. During the next 20 years, article 7-B of the Judiciary Law was amended on five occasions to increase the judicial rate of pay (see L 1980, ch 881; L 1984, ch 986; L 1987, ch 263; L 1993, ch 60; L 1998, ch 630). It was through these amendments to article 7-B of the Judiciary Law that the legislature established the compensation of state-paid judges and justices as required by the Compensation Clause {see NY Const, art VI, § 25 [a]).
Each year, as a part of the executive budgeting process of this state, the judiciary must estimate its financial needs and transmit a budget request to the Governor, who must include that request in his or her executive budget without revision {see NY Const, art VII, § 1). The executive budget must be transmitted to the legislature {see NY Const, art VII, § 2), and those portions of the appropriation bill which the legislature does not “strike out or reduce” immediately become law when passed by both houses (NY Const, art VII, § 4; see Pataki v New York State Assembly, 4 NY3d 75, 110 [2004]).
Beginning with its 2006-2007 budget request, and continuing for the next five years, the judiciary repeatedly noted that the judges and justices of New York had not received pay increases since the 1998 amendment to article 7-B of the Judiciary Law, and urged the legislature to take “legislative action on judicial compensation” (2006-2007 Judiciary Budget Request, Executive Budget Agency Presentations at 504). The judiciary included budget items in each of these requests to fund increases in judicial compensation (see id.; 2007-2008 Judiciary Budget Request, Executive Budget Agency Presentations at 539; 2008-2009 Judiciary Budget Request, Executive Budget Agency Presentations at 542; 2009-2010 Judiciary Budget Request, Executive Budget Agency Presentations at 517; 2010-2011 Judiciary Budget Request, Executive Budget Agency Presentations at 467).
The 2006-2007 budget bill presented to the legislature, as amended, included $69.5 million “[f]or expenses necessary to fund adjustments in the compensation of state-paid judges and justices of the unified court system pursuant to a chapter of the laws of 2006” (2006 NY Senate-Assembly Bill S6451-A, A9551-B). The legislature subsequently approved the requested appropriation {see L 2006, ch 51, § 2). However, since the legislature did *87 not amend the judicial salary schedules set forth in article 7-B of the Judiciary Law, the rate of judicial compensation set forth in article 7-B of the Judiciary Law remained in effect (see Matter of Maron v Silver, 14 NY3d at 245). Although a CPLR article 78 proceeding was commenced to, among other things, compel the comptroller to pay out the money appropriated in the state budget for salary increases, the Court of Appeals concluded that mandamus did not lie “because no subsequent chapter law was enacted either amending the Judiciary Law salary schedules or directing the disbursement of the funds” (id. at 249).
Beginning in its 2007-2008 budget request, the judiciary included proposed salary schedules setting forth the increased level of compensation applicable to each of the various classes of judges and justices of this state (see 2007 NY Senate-Assembly Bill S2101, A4301; 2008 NY Senate-Assembly Bill S6801, A9801; 2009 NY Senate-Assembly Bill S51, A151; 2010 NY Senate-Assembly Bill S6601, A9701). These salary schedules included language which would have repealed article 7-B of the Judiciary Law by making the new salary schedules applicable “[notwithstanding any other provision of law” (id.).
In each year from 2007 through 2010, the legislature struck out the language setting forth the proposed salary schedules that would have served to repeal article 7-B of the Judiciary Law and establish new levels of judicial compensation (see L 2007, ch 51; L 2008, ch 51; L 2009, ch 51; L 2010, ch 51). However, in each year from 2008 through 2010, the legislature nevertheless enacted a budget that directed that money be set aside “[f]or expenses necessary to fund adjustments in the compensation of state-paid judges and justices of the unified court system” (L 2008, ch 51, § 2; L 2009, ch 51, § 2; L 2010, ch 51, § 2).
Judicial compensation continued to be paid out between 2007 and 2011 in accordance with the salary schedules established in article 7-B of the Judiciary Law. The plaintiffs in this case, duly elected or appointed judges or justices of the Unified Court System, commenced this action against the State of New York by summons and complaint dated July 13, 2010. The plaintiffs sought a judgment declaring that the compensation of judges and justices of the Unified Court System of the State of New York was duly increased pursuant to Laws of 2009, chapter 51, §3.
The plaintiffs argued that the 2009-2010 budget that was enacted by the legislature effected an increase in judicial *88 compensation. In this regard, the plaintiffs cited to the fact that the proposed budget bill originally included certain language that had appeared in brackets (see 2009 NY Senate-Assembly Bill S51, A151). This language indicated that adjustments in judicial compensation would be accomplished “[pursuant to a subsequent chapter of law specifying such salary levels]” (2009 NY Senate-Assembly Bill S51, A151; compare L 2009, ch 51). Since this reference to anticipated future legislation that was to be enacted to adjust the existing judicial salary schedules was omitted from the 2009-2010 budget bill that was enacted into law, the plaintiffs argued that the legislature manifested an intent to increase judicial compensation through its enactment, without the need for additional legislation. The plaintiffs noted that in previous years, the legislature enacted budgets that had included references to future legislation, and argued that the legislature’s decision to enact a budget without similar language entitled them, and every other judge and justice of the Unified Court System, to an unspecified increase in compensation retroactive to 2009.
Notwithstanding what the plaintiffs characterize as the “plain language” of the enacted 2009-2010 budget bill, it is undisputed that state-paid judges continued to receive their compensation in accordance with article 7-B of the Judiciary Law, and the judicial branch continued to advocate for a judicial pay raise. The 2010-2011 judiciary budget request, submitted in December 2009, included a request for $6.3 million “for the Judicial Supplemental Support Fund, which provide [d] judges assistance with certain work-related expenses” (2010-2011 Judiciary Budget Request, Executive Budge Agency Presentations at 467). In requesting these funds, the judiciary noted that “[w]ith the approaching eleventh anniversary of the last cost-of-living adjustment received by New York’s judges, this request is appropriate and necessary” (id.). The judiciary went on to state that “[a]s with recent past budget requests, this request addresses the critical matter of judicial compensation,” and the judiciary’s request included “a reappropriation for that purpose and language that would raise judicial compensation, retroactive to April 1, 2005” (id. at 469).
Once again, the 2010-2011 budget bill presented to the legislature included provisions that would have amended the salary schedules set forth in article 7-B of the Judiciary Law (see 2010 NY Senate-Assembly Bill S6601, A9701). Once again, the salary schedules that were proposed by the judiciary were *89 deleted by the legislature (see L 2010, ch 51, § 2), and the 2010-2011 budget that was enacted on July 2, 2010, contained only an appropriation “for expenses necessary to fund adjustments” injudicial compensation (L 2010, ch 51, § 3).
However, later that year, legislation was enacted to create a Special Commission on Judicial Compensation (see L 2010, ch 567, § 1 [a]). The legislation had been introduced because “[s]alaries for State-paid judges and justices of the Unified Court System were last increased pursuant to . . . the Laws of 1998” (Senate Introducer Mem in Support, Bill Jacket, L 2010, ch 567 at 7).
The new law provided that recommendations by the Special Commission “shall have the force of law, and shall supersede inconsistent provisions of article 7-B of the judiciary law, unless modified or abrogated by statute” (L 2010, ch 567, § 1 [h]). In August 2011, the Special Commission recommended certain salary increases beginning on April 1, 2012 (see Joel Stashenko, Staged Raise of 27% is Endorsed for Judges, NYLJ, Aug. 29, 2011, at 1, col 3; William Glaberson, Commission Raises N.Y. Judges’ Pay 27% Over 3 Years, NY Times, Aug. 26, 2011, § A at 1). As all parties to this action acknowledge, these recommended increases went into effect as of April 1, 2012.
After the plaintiffs’ complaint was amended, the State moved to dismiss the amended complaint for failure to state a cause of action or, in effect, in the alternative, for a judgment declaring that the compensation of judges and justices of the Unified Court System of the State of New York was not duly increased by the enactment of Laws of 2009, chapter 51, § 3, and that the State is not obligated to pay the judges and justices of the Unified Court System of the State of New York in accordance therewith retroactive to April 1, 2009. The plaintiffs cross-moved for summary judgment declaring that the compensation of judges and justices of the Unified Court System of the State of New York was duly increased pursuant to Laws of 2009, chapter 51, § 3, and that the State is obligated to pay the judges and justices of the Unified Court System of the State of New York in accordance therewith retroactive to April 1, 2009. The Supreme Court, upon converting the State’s motion to dismiss into a motion for summary judgment, granted the plaintiffs’ cross motion and, in effect, denied the State’s motion (2011 NY Slip Op 34047[U] [2011]). Thereupon, in the judgment appealed from, the court, inter alia, declared that the compensation of judges and justices of the Unified Court System was duly increased *90 pursuant to Laws of 2009, chapter 51, § 3, and directed the State to pay the judges and justices of the Unified Court System in accordance with the salary schedules contained in the “Executive Summary” of the 2009-2010 Judiciary Budget Request, retroactive to April 1, 2009. We reverse.
II. Discussion
As a preliminary matter, this case requires a determination as to whether the legislature increased judicial compensation through the enactment of Laws of 2009, chapter 51, § 3. Consequently, as previously recognized, members of this Court have a pecuniary interest in this case and will be affected by the outcome of this appeal (see Judiciary Law § 221-a, as added by L 1998, ch 630, § 1; see also Matter of Maron v Silver, 14 NY3d at 248-249).
“The participation of an independent, unbiased adjudicator in the resolution of disputes is an essential element of due process of law, guaranteed by the Federal and State Constitutions” (Matter of General Motors Corp.—Delco Prods. Div. v Rosa, 82 NY2d 183, 188 [1993]; see US Const, 14th Amend, § 1; NY Const, art I, § 6). “Judicial independence contributes not only to accurate determinations but also to the appearance of fairness, equality between the parties, and predictability and rationality of result” (Matter of General Motors Corp.—Delco Prods. Div. v Rosa, 82 NY2d at 188). Accordingly, in order to ensure the dignity of the judiciary and maintain the integrity of the administration of justice, “[o]rdinarily, when a judge has an interest in litigation, recusal is warranted” (Matter of Maron v Silver, 14 NY3d at 249; see Judiciary Law § 14; Casterella v Casterella, 65 AD2d 614 [1978]).
However, “[t]he Rule of Necessity provides a narrow exception to this principle, requiring a biased adjudicator to decide a case if and only if the dispute cannot otherwise be heard” (Matter of General Motors Corp.—Delco Prods. Div. v Rosa, 82 NY2d at 188; see Matter of Maron v Silver, 14 NY3d at 249). “Thus, where all members of the adjudicative body are disqualified and no other body exists to which the appeal might be referred for disposition, the Rule of Necessity ensures that neither the parties nor the Legislature will be left without the remedy provided by law” (Matter of General Motors Corp.—Delco Prods. Div. v Rosa, 82 NY2d at 188; see Matter of Maron v Silver, 14 NY3d at 249).
Here, the self-interest implicated by the issues raised on appeal would provide grounds for disqualifying not only the jus *91 tices of this Court, but any other judicial body which might replace it. Accordingly, since the recusal of the members of this Court, and those of every other court in the Unified Court System, would leave the plaintiffs without a legal remedy, the “Rule of Necessity” compels us to decide this appeal on the merits, notwithstanding our personal stake in the litigation (see Matter of Maron v Silver, 14 NY3d at 249).
The Supreme Court, in reaching its determination of the merits of this action, accepted the plaintiffs’ argument that the plain language of the statute demonstrates that the compensation of judges and justices of the Unified Court System of the State of New York was duly increased through the enactment of Laws of 2009, chapter 51, § 3. The plaintiffs continue to maintain that the plain language of the legislation is determinative of this appeal.
“It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature” (Patrolmen’s Benevolent Assn. of City of N.Y. v City of New York, 41 NY2d 205, 208 [1976]; see State of New York v Patricia II., 6 NY3d 160, 162 [2006]). “When interpreting a statute, we turn first to the text as the best evidence of the Legislature’s intent” (Matter of Theroux v Reilly, 1 NY3d 232, 239 [2003]; see Hudson Val. Oil Heat Council, Inc. v Town of Warwick, 7 AD3d 572, 574 [2004]).
Here, the language upon which the plaintiffs rely states that $51,006,759 was to be appropriated “[f]or expenses necessary to fund adjustments in the compensation of state-paid judges and justices of the unified court system and of housing judges of the New York city civil court” (L 2009, ch 51, § 3).
Contrary to the Supreme Court’s conclusion, there is no language in the statute that adjusts the salary schedules of the various judges and justices of this state. As in prior years, the plain language of the statute merely directs that a certain sum necessary for adjusting judicial compensation be set aside— what has previously been recognized as a “ ‘dry appropriation’ ” (Matter of Maron v Silver, 14 NY3d at 245).
The plaintiffs’ position is that the statute must have adjusted the rates of judicial compensation because it referenced the purpose of the appropriation. However, this argument is not actually based on the plain language of the statute. Instead, it rests on an inference drawn from a reference to the appropriation’s purpose.
*92 Furthermore, the plaintiffs’ plain language argument would require us to interpret the statute in a manner that would render it unconstitutional (cf. McKinney’s Cons Laws of NY, Book 1, Statutes § 150 [c]). As previously noted, article VI, § 25 (a) of the New York Constitution, also known as the “Compensation Clause,” requires judicial compensation to be “established by law.” Pursuant to this directive, the legislature enacted Judiciary Law article 7-B, which sets forth the varying salaries to be paid to the Judges of the Court of Appeals (see Judiciary Law §221), the Justices of the Appellate Division of the Supreme Court (see Judiciary Law § 221-a), the Justices of the Supreme Court (see Judiciary Law § 221-b), the Justices of the Appellate Term of the Supreme Court (see Judiciary Law § 221-bb), the Judges of the Court of Claims (see Judiciary Law § 221-c), the Judges of the County Court (see Judiciary Law § 221-d), the Judges of the Family Court (see Judiciary Law § 221-e), the Judges of the Surrogate’s Court (see Judiciary Law § 221-f), the Judges of the civil and criminal City Courts (see Judiciary Law §§ 221-g, 221-i), and the Judges of the District Court (see Judiciary Law § 221-h).
The statute at issue merely appropriated a lump sum of $51,006,759 for compensation adjustments (see L 2009, ch 51, § 3). Accordingly, nothing in the plain language of the statute establishes, within that gross amount, what monies are to be specifically paid to Justices of the Supreme Court and what lesser or greater sums are to be paid to the jurists of the other courts of the State (compare Judiciary Law §§ 221 — 221-i).
The plaintiffs argue, inter alia, that the gross $51,006,759 appropriation may be divided by the Chief Judge, in conformity with a salary schedule that was part of the Executive Summary accompanying the judiciary’s 2009-2010 budget request. However, the Executive Summary was never enacted as part of the statute (see L 2009, ch 51, § 3). Accordingly, the Supreme Court’s direction that the salaries of the judges and justices of the State be set pursuant to an Executive Summary that was not incorporated into any legislation was in conflict with “the constitutional requirement that judicial compensation be ‘established by law’ ” (Matter of Maron v Silver, 14 NY3d at 249, quoting NY Const, art VT, § 25 [a]). The Supreme Court’s determination that the salary schedules contained in article 7-B of the Judiciary Law were impliedly repealed, and that the more than $51 million of state funds were to be disbursed by the Chief Judge “pursuant to the formula set forth in the Executive *93 Summary submitted by the Unified Court System,” runs afoul of the Compensation Clause of the New York Constitution (see NY Const, art VI, § 25 [a]).
The Supreme Court’s characterization of this failure to enact the new salary schedules as nothing more than a lack of precision in itemization is unpersuasive. It is true that, as a general matter, “the degree of itemization necessary in a particular budget is whatever degree ... is necessary for the Legislature to effectively review that budget” (Saxton v Carey, 44 NY2d 545, 550 [1978]). Indeed, gross appropriations to other departments of state government, such as the Department of Motor Vehicles or the Department of Health, may be divisible by the heads of those departments as they deem fit. However, the judiciary occupies a different constitutional plane, and the legislature’s flexibility in itemization does not free it of its constitutional duty to establish the level of judicial compensation “by law” (NY Const, art VI, § 25 [a]). In sum, the plaintiffs’ argument that the plain language of the statute was effective to establish new salary levels for the various classes of judges and justices of this State is without merit both on the face of the statute itself and because any such attempt to transfer the authority to set those salary levels, sub silentio, to the Chief Judge, would be unconstitutional (see NY Const, art VI, § 25 [a]; cf. McKinney’s Cons Laws of NY, Book 1, Statutes § 150 [c]).
Despite the plaintiffs’ position that the legislature’s intent may be determined by the plain language of the statute, they nevertheless contend that the legislature’s intent may be gleaned from the language that was included within brackets in the proposed bill, but was specifically omitted by the legislature in the final version that was enacted into statute. In this regard, the plaintiffs cite to the fact that the enacted budget statute omitted language indicating that adjustments in judicial compensation would be accomplished “[pursuant to a subsequent chapter of law specifying such salary levels]” (2009 NY Senate-Assembly Bill S51, A151 [brackets in original]; compare L 2009, ch 51). The plaintiffs contend that by enacting the 2009-2010 budget statute without this reference to the enactment of future legislation, the legislature manifested its intent to increase judicial compensation.
In support of their contention, the plaintiffs rely on the Court of Appeals’ decision in Matter of Maron v Silver (14 NY3d 230 [2010]). In that case, the Court of Appeals considered section 2 *94 of chapter 51 of the Laws of 2006, which “contained a . . . budget item ‘[f]or expenses necessary to fund adjustments in the compensation of state-paid judges and justices of the unified court system pursuant to a chapter of the laws of 2006’ ” (Matter of Maron v Silver, 14 NY3d at 249 [emphasis omitted], quoting L 2006, ch 51, § 2). The Court rejected the contention that by appropriating funds necessary to enable an adjustment in judicial compensation in the 2006-2007 state budget, the legislature had effected an increase in judicial compensation (see Matter of Maron v Silver, 14 NY3d at 249).
The plaintiffs note that unlike the 2006-2007 state budget at issue in Matter of Maron v Silver, the 2009-2010 budget at issue here did not contain any reference to future legislation. The plaintiffs point out that the Court of Appeals cited this factor during the course of its analysis, stating that the appropriation “was explicitly made contingent upon the adoption of additional legislation,” and that there would have been no need for the qualifying language if the legislature had intended the appropriation to “be self-executing” {id.).
However, the plaintiffs’ reliance on Matter of Maron v Silver is misplaced. That case did not turn solely on the reference to anticipated legislation in the statute. Indeed, the Court also stated that “a mere provision calling for a lump-sum pay ment . . . without repeal or revision of the Judiciary Law article 7-B judicial salary schedules is further evidence that additional legislation was required before the funds could be disbursed” {id. at 250). The Court ultimately held that the appropriation of funds necessary to enable an adjustment in judicial compensation had not effected an increase in judicial compensation “because no subsequent chapter law was enacted either amending the Judicial Law salary schedules or directing the disbursement of the funds” (id. at 249). Since, in this case, the legislature did not either amend the existing salary schedules contained in article 7-B of the Judiciary Law or otherwise direct the disbursement of the appropriated funds, the plaintiffs’ attempt to distinguish Matter of Maron v Silver so as to avoid the same result amounts to a distinction without a difference.
Moreover, if, as the plaintiffs contend, we must look outside the plain language of the appropriation itself to resolve any ambiguity as to the legislature’s intent, we must consider all other extrinsic information — legislative debate, legislative history, language amendments, and the circumstances surrounding the statute’s passage — that speak to the legislature’s intent in *95 enacting the subject provision (see Riley v County of Broome, 95 NY2d 455, 463-464 [2000]).
With the door open to extrinsic information, it must be recognized that during the floor debates, members of the legislature expressed the view that the adjustment of judicial salaries could not take place without repeal or amendment of article 7-B of the Judiciary Law, notwithstanding the elimination of the reference to future legislation. During the Assembly floor debate, one member of the Assembly stated:
“As required by New York State’s Constitution, judicial salaries are and have always been set by law, Article VII (B) of the Judiciary Law. A reappropriation of potentially available monies cannot and does not change that law and what it certainly does not authorize is any salary increases. The notion that the Office of Court Administration has been somehow authorized or empowered to ignore both the New York State Constitution and Article VII (B) of the Judiciary Law by some words stricken from an appropriation is 100 percent incorrect. Simply stated, some redundant words were removed, but these words could be replaced if that was deemed necessary to eliminate any contrived confusion in a chapter amendment. No New York State court in any case, and there have been several, has ever determined that judicial salaries could be adjusted without amendments to Article VII (B) of the Judiciary Law” (NY Assembly Debate Transcript on Assembly Bill A151, Mar. 31, 2009 at 378).
Similarly, during the Senate floor debate, the following colloquy took place:
“THE SECRETARY: . . . Assembly Budget Bill, Assembly Print Number 151A, an act making appropriations for the support of government: Legislature and Judiciary Budget.
“ACTING PRESIDENT VALESKY: Senator DeFrancisco [ranking member of the State Finance Committee], on the bill. . . .
“SENATOR DeFRANCISCO: ... If Senator John Sampson, chair of Judiciary, could answer a question, I’d appreciate it. . . .
“SENATOR DeFRANCISCO: . . . Senator Samp *96 son, in the Governor’s proposed budget there was a pot of money designated for judicial salaries. And the understanding was out of the judiciary budget that was submitted by the judiciary and submitted by the Governor, that out of that money there was enough money available for a salary increase for the judiciary.
“I understand that the language authorizing such an increase is not in the final budget; is that correct?
“SENATOR SAMPSON: That’s correct. . . .
“SENATOR DeFRANCISCO: In order for the judiciary to receive a salary increase from this budget, is it correct that there would have to be a separate bill authorizing such an increase separate and apart from this budget?
“SENATOR SAMPSON: That’s correct, Senator
“SENATOR DeFRANCISCO: One last question, . . . just to be clear. . . .
“SENATOR DeFRANCISCO: Stated another way, the only mechanism for a judicial salary increase would be through a separate piece of legislation. And just because the same money is in the budget, that would not authorize, for example, the head of the Office of Court Administration or the Chief Judge of the Court of Appeals to simply grant an increase?
“SENATOR SAMPSON . . . [Y]ou are correct, Senator DeFrancisco” (NY Senate Debate Transcript on Senate Bill S51, Apr. 3, 2009 at 3400-3403).
The plaintiffs’ position that the legislature evinced its intent to adjust the judicial salary schedules contained in article 7-B of the Judiciary Law by omitting any reference to future legislation is directly contradicted by the views expressed during the course of the floor debates in both the Assembly and the Senate. The record of the floor debates demonstrates that members of the legislature did not think it necessary to include a reference to a nonexistent law and that such language was superfluous to the purpose of effecting a dry appropriation. It is notable that these views were not challenged or questioned by any of *97 the other members of the legislature, and no contrary views were expressed. Accordingly, while the uncontroverted views of individual legislators do not conclusively demonstrate the intent of the entire legislature in enacting the 2009-2010 budget, they nevertheless constitute compelling evidence of that body’s intent.
The legislature’s intent was even more fundamentally expressed through substantive changes made to the proposed legislation. In enacting the statute, the legislature struck the provisions of the bill which contained the new salary schedules that had been proposed by the judiciary. Indeed, despite its conclusion that the increase in judicial compensation was compelled through the plain language of the statute, the Supreme Court was unable to effect the salary adjustment through use of the language that was actually enacted. It was compelled to utilize salary schedules that were not only outside the language of the statute, but were affirmatively deleted by the legislature. As was the case in Matter of Maron v Silver, the legislature’s decision not to explicitly repeal or revise article 7-B of the Judiciary Law constitutes “evidence that additional legislation was required before the funds could be disbursed” and that this budget item constituted another dry appropriation (Matter of Maron v Silver, 14 NY3d at 250).
The new salary schedules which the Supreme Court directed to be implemented based on the plain language of the statute were not only stricken from the enacted version of the statute, but they directly conflict with the duly-enacted salary schedules contained in article 7-B of the Judiciary Law. Accordingly, the plaintiffs must again rely on inference and implication to explain how the legislature effected a judicial pay raise without amending or repealing article 7-B of the Judiciary Law. The plaintiffs’ explanation is that article 7-B of the Judiciary Law was impliedly repealed by the enactment of the 2009-2010 appropriations statute.
“Repeal by implication results from some enactment, the terms and operation of which cannot be harmonized with the terms and necessary effect of an earlier statute” (McKinney’s Cons Laws of NY, Book 1, Statutes § 391, Comment; see Czarnowsky v City of Rochester, 55 App Div 388, 390 [1900]). However, “[t]he repeal of a statute by implication is not favored by law, for when the legislature intends to repeal an act it usually says so expressly” (Matter of Tiffany, 179 NY 455, 457 [1904]; see McKinney’s Cons Laws of NY, Book 1, Statutes *98 § 391). “One reason for the disfavor which repeals by implication have encountered is that they carry a tacit reflection upon the legislators that they ignorantly made one act repugnant to and inconsistent with a prior law” (McKinney’s Cons Laws of NY, Book 1, Statutes § 391, Comment; see M’Cartee v Orphan Asylum Socy. of City of N.Y., 9 Cow 437 [Ct Correction of Errors 1827]; Czarnowsky v City of Rochester, 55 App Div at 390).
“As laws are presumed to be passed with deliberation and with full knowledge of all existing ones on the same subjects, it is but reasonable to conclude that the legislature, in passing a statute, did not intend to interfere with or abrogate any former law relating to the same matter, unless the repugnancy between the two is irreconcileable” (Bowen v Lease, 5 Hill 221, 226 [Sup Ct, NY Cir 1843]; see Czarnowsky v City of Rochester, 55 App Div at 390).
“In order to have this effect, the repugnancy must be so palpable that upon reading the two acts together it is obvious, without the aid of elaborate argument, that both could not have been intended to remain in force at the same time” (Matter of Tiffany, 179 NY at 457). “If by any fair construction, both statutes can be given operation, implied repeal will not be declared” (Cimo v State of New York, 306 NY 143, 149 [1953]).
Here, the subject appropriation contained in Laws of 2009, chapter 51, § 3, can be reconciled with article 7-B of the Judiciary Law without much difficulty. By construing that appropriation consistent with the plain meaning of its language and prior such appropriations enacted by the legislature, so that it merely directed funds to be set aside, the appropriation may be harmonized with the salary schedule contained in article 7-B of the Judiciary Law. To accept the plaintiffs’ argument would require us to conclude that the legislature intentionally deleted what would have been explicit amendments to the salary schedule set forth in article 7-B of the Judiciary Law so that judicial compensation could be adjusted by utilizing the doctrine of repeal by implication, in conjunction with the implementation of the deleted salary schedules (see generally Cimo v State of New York, 306 NY at 149; Matter of Tiffany, 179 NY at 457; Czarnowsky v City of Rochester, 55 App Div at 390; see also McKinney’s Cons Laws of NY, Book 1, Statutes § 391).
The more convincing view is that the legislature, in enacting the appropriation, was continuing upon the same course it had established in the preceding years — appropriating the funds *99 necessary to implement a salary increase so that one could be effected if and when the legislature was willing to accept and support such an increase. Although the Supreme Court correctly determined that the historical practices of the legislature are not necessarily determinative of legislative intent (citing Pataki v New York State Assembly, 4 NY3d 75 [2004]), they still constitute a factor that, in this case, indicates that the legislature did not intend to effect an unspecified adjustment to the salary schedules of every state-paid judge and justice in the State through the enactment of the budget appropriation.
It is notable that the Supreme Court made no finding that the legislature intended to adjust the existing salary schedules in enacting the 2009-2010 budget bill. The Supreme Court instead stated that it would “draw the only appropriate conclusion as to the words chosen by the Legislature” (2011 NY Slip Op 34047[U], * 7). In effect, the Supreme Court determined that the legislature, by enacting the subject appropriation, had unwittingly given the judiciary a raise. The plaintiffs have even explicitly taken this position, stating “[w]hether by intention or inadvertence, ch. 51 fully and finally increased judicial compensation” (emphasis added).
This argument reveals a fundamental misapprehension of the basic tenets of statutory interpretation. “Since the intention of the Legislature, embodied in a statute, is the law, in the construction of statutes the basic rule of procedure and the primary consideration of the courts is to ascertain and give effect to the intention of the Legislature” (McKinney’s Cons Laws of NY, Book 1, Statutes § 92 [a], Comment). The concept of legislative intent has been described as “the fundamental rule,” “the great principle which is to control,” the “cardinal rule,” and “the grand central light in which all statutes must be read” {id. [internal quotation marks omitted]). “Indeed the Legislature’s intent must be ascertained and effectuated whatever may be the opinion of the judiciary as to the wisdom, expediency, or policy of the statute” {id.). Where, as here, the legislature has clearly manifested its intent in enacting legislation, it is the duty of the courts to give effect to that intent, not to disregard it.
III. Conclusion
For years, the elected officials comprising the legislature publicly extolled the merits of a pay increase for the judiciary and professed to demonstrate their good intentions by ap *100 propriating funds that would be necessary to adjust the salary schedules contained in article 7-B of the Judiciary Law. Those professed intentions were never realized, however, because the legislature never took the steps necessary to amend the salary schedules setting forth the levels of judicial compensation. It serves no useful purpose for this Court to engage in speculation as to why these steps were never taken. In deciding this appeal, under the “Rule of Necessity,” we are constrained to discern and apply the will of the elected members of the legislature and not our own perceptions of what might be equitable (see Matter of Orens v Novello, 99 NY2d 180 [2002]; Maraia v Orange Regional Med. Ctr., 63 AD3d 1113 [2009]). As Alexander Hamilton recognized in The Federalist, “[i]t can be of no weight to say that the courts . . . may substitute their own pleasure to the constitutional intentions of the legislature” (Hamilton, Federalist No. 78).
In sum, we conclude that the legislature did not adjust judicial compensation through the enactment of Laws of 2009, chapter 51, § 3. In so doing, we make no comment on the wisdom of the legislature’s decision or the manner in which it was carried out. Accordingly, the judgment is reversed, on the law, the plaintiffs’ cross motion for summary judgment is denied, the State’s converted motion for summary judgment is granted, the order is modified accordingly, and the matter is remitted to the Supreme Court, Nassau County, for the entry of an appropriate judgment declaring that the compensation of judges and justices of the Unified Court System of the State of New York was not increased by the enactment of Laws of 2009, chapter 51, § 3.
Dillon, J.R, Lott and Cohen, JJ., concur.
Ordered that the judgment is reversed, on the law, without costs or disbursements, the plaintiffs’ cross motion for summary judgment is denied, the defendant’s converted motion for summary judgment is granted, the order is modified accordingly, and the matter is remitted to the Supreme Court, Nassau County, for the entry of an appropriate judgment declaring that the compensation of judges and justices of the Unified Court System of the State of New York was not increased by the enactment of Laws of 2009, chapter 51, § 3.
Motion by the respondents, on an appeal from a judgment of the Supreme Court, Nassau County, entered March 16, 2011, inter alia, to strike portions of the appellant’s brief on the *101 ground that they refer to matter dehors the record. By decision and order on motion of this Court dated February 3, 2012, as amended February 16, 2012, the branch of the motion which is to strike portions of the appellant’s brief on the ground that they refer to matter dehors the record was held in abeyance and referred to the panel of Justices hearing the appeal for determination upon the argument or submission thereof.
Upon the papers filed in support of the motion, the papers filed in opposition thereto, and upon the argument of the appeal, it is
Ordered that the branch of the motion which is to strike portions of the appellant’s brief on the ground that they refer to matter dehors the record is denied.