█ EILEEN BRANSTEN, Justice of the Supreme Court of the State of New York, et al., Respondents, v STATE OF NEW YORK, Appellant. [985 NYS2d 60]—

Order, Supreme Court, New York County (Carol R. Edmead, J.), entered May 21, 2013, which denied defendant's motion to dismiss the complaint, unanimously affirmed, without costs.

Plaintiffs, who are sitting and retired members of the New York State Judiciary, seek a declaratory judgment and injunctive relief stating that the State's recent decrease in its contribution to the cost of judges' health care insurance premiums violates the Compensation Clause of the New York State Constitution (NY Const, art VI, § 25 [a]) which provides "compensation of a judge . . . shall be established by law and shall not be diminished during the term of office for which he or she was elected or appointed."

Defendants move to dismiss the complaint pursuant to CPLR 3211 for failure to state a claim. We hold that the reduced contribution, which in turn increased the amounts withheld from judicial salaries, constitutes an unconstitutional diminution of judicial compensation and deny the motion to dismiss.

The reduction in contribution to health insurance premiums occurred in 2011, when the State, faced with a serious budget shortfall, threatened to lay off thousands of workers unless unionized employees made wage and benefit concessions that included bearing more of the cost of their health care insurance. While negotiations with unionized employees were underway, the legislature in August 2011 amended Civil Service Law § 167 (8) to authorize the Civil Service Department, with the State Budget Director's approval, to reduce the State's contribution to health care insurance premiums not only for unionized employees who had agreed to the reductions through collective bargaining, but also for some nonunionized employees.

Section 167 (8), as amended, separated state employees into three categories. First, the State's decreased contribution was imposed on unionized employees who, through collective

bargaining, had agreed to the reduction in exchange for immunity from layoffs. Second, state premium contributions remained unchanged for unionized employees who had rejected the reductions, but those employees remained vulnerable to layoffs. Third, reductions were imposed on nonunionized employees without their consent in exchange for which those employees were also promised immunity from layoffs.

The statute was silent as to whether the reductions applied to judges. However, in September 2011, the Civil Service Department promulgated rules reducing state contributions for health care insurance premiums for individuals designated as managerial or confidential or otherwise excluded from collective bargaining within the meaning of the Taylor Law (Civil Service Law art 14). Members of the judiciary fell within this category. In accordance with the new rules, in September 2011 the State notified judges that it would reduce its contribution to sitting judges' premiums by 6% and reduce its contributions to retired judges' premiums by 2%.

Plaintiffs now seek a permanent injunction against the reductions based on a declaration that the amendment to section 167 (8), as applied to them, violates the Compensation Clause of the New York State Constitution, which prohibits diminution.

In its motion to dismiss for failure to state a claim, the State argues that the Compensation Clause does not prohibit the State from decreasing its contributions to the insurance premiums because any reduction to judicial compensation was "indirect" and nondiscriminatory. Denying the motion, Supreme Court found that the State's reduced contribution amounted to a direct diminution of judicial compensation because it increased the amount withheld from judicial salaries. The court further held that the amendment to section 167 (8) was discriminatory as applied to judges because they were differently situated from other state employees.

On appeal, defendant does not argue that reducing its contribution to insurance premiums did not directly diminish judges' compensation. Instead, the State first argues that its contribution to judges' health insurance premiums are not "compensation" within the meaning of the Compensation Clause.* However, it is settled law that employees' compensation includes all things of value received from their employers, including wages, bonuses, and benefits. This Court has recognized that judicial "compensation" under the Compensation Clause

---

* Defendant did not make this argument below, but this Court can consider new arguments on appeal that present pure questions of law (*DiFigola v Horatio Arms*, 189 AD2d 724 [1st Dept 1993]).

includes both "the pay scale and benefits" (*Larabee v Governor of State of N.Y.*, 65 AD3d 74, 85-86 [1st Dept 2009], *mod on other grounds sub nom. Matter of Maron v Silver*, 14 NY3d 230 [2010]), and the Second Department has expressly found that health insurance benefits are a component of a judge's compensation (*see Roe v Board of Trustees of Vil. of Bellport*, 65 AD3d 1211 [2d Dept 2009] [striking down legislation terminating health insurance provided to a village justice during his term of office]).

As applied to New York judges, the amended section 167 (8) subjects them to discriminatory treatment also in violation of the state Compensation Clause. In its implementation, the amended statute affects judges differently from virtually all other state employees, who either consented to the State's reduced contribution in exchange for immunity from layoffs or were otherwise compensated by the State's promise of job security. Unlike other state employees, judges were forced to make increased contributions to their health care insurance premiums, without receiving any benefits in exchange. The judiciary had no power to negotiate with the State with respect to the decrease in compensation, and received no benefit from the no-layoffs promise, because their terms of office were either statutorily or constitutionally mandated. Thus, section 167 (8) uniquely discriminates against judges because it imposes a financial burden on them for which they received no compensatory benefit.

New Jersey judges were recently faced with a similar situation. The New Jersey Constitution also prohibits diminution of judicial compensation although it uses the word "salary" instead of "compensation." In *DePascale v State* (211 NJ 40, 47 A3d 690 [2012]), the New Jersey Supreme Court found that the term "salary" encompassed contributions to judges' health care insurance premiums and, accordingly, that New Jersey's reduced contribution to the premiums of sitting judges violated the State's Compensation Clause (*DePascale*, 211 NJ at 43, 47 A3d at 692).

Defendant argues that, even if the State's reduced contribution to judges' insurance premiums constitutes a diminution of their compensation, the reduction is permissible under *United States v Hatter* (532 US 557 [2001]) because *Hatter* permitted imposition of a Federal Medicare tax on judges. We find to the contrary because *Hatter* also found that under the Compensation Clause of the United States Constitution, which prohibits reductions in compensation, judges could not be subject to a Social Security tax.

In *Hatter*, the question before the Supreme Court was whether the Compensation Clause precluded the federal government from imposing Medicare and Social Security taxes on already sitting federal judges when it extended imposition of those taxes to all federal employees. The Supreme Court found that applying the Social Security tax to sitting federal judges violated the Federal Compensation Clause because it effectively singled out federal judges for unfavorable treatment in comparison to other government employees. The 1983 law at issue permitted about 96% of all federal workers who were employed when the statute took effect to opt out of the Social Security system and avoid paying Social Security taxes. Of the remaining 4% of the then-current federal employees, all of whom were high-ranking employees and almost all of whom were paying into a pension system, the new federal law permitted that group to join the Social Security program without paying more than they had been contributing to their existing pension system (*id.* at 572-579).

But, the statutory scheme left a subset of employees, virtually all of whom were sitting federal judges, in an anomalous position. These employees were required to pay Social Security taxes even though previously they had participated in a noncontributory pension plan. Because the law imposed unique burdens on federal judges, the Supreme Court held, its application violated the Federal Compensation Clause (*id.*).

Defendant argues that the amendment to section 167 (8) is akin to that aspect of a 1982 law that extended the Medicare tax to all employees and was upheld in *Hatter* (532 US at 561). But that argument is without merit because that tax is similar to an across the board income tax imposed upon all citizens, regardless of who employs them.

Like the 1983 law that was considered in *Hatter*, the effect of the amendment to section 167 (8) on New York's judges uniquely and detrimentally affects the judiciary and diminishes its compensation. As has been discussed, the increased withholding sustained by judges was not imposed uniformly upon all state employees, much less upon all employees in general. The increased deduction here is therefore more akin to the Social Security tax which the Supreme Court struck down than it is to the Medicare tax which the Supreme Court upheld (*see Larabee*, 65 AD3d at 85-87).

Accordingly, defendant's motion to dismiss was properly denied. Concur—Sweeny, J.P., Renwick, Freedman and Gische, JJ.